KATZ CORPORATION *v.* T. H. CANTY
AND COMPANY, INC., ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 5, 1974—decision released March 25, 1975

*Robert A. Slavitt,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellant (plaintiff).

*David Goldstein,* with whom were *John Keogh, Jr.,* and, on the brief, *Michael A. Meyers,* for the appellees (defendants).

BOGDANSKI, J. This stockholder's derivative action was brought on behalf of the defendant T. H. Canty and Company, Inc., a Connecticut corporation, by the Katz Corporation, a Delaware corporation and minority stockholder of the defendant corporation. The plaintiff sought relief against the defendants Michael Steinberg, John Keogh, Jr., and Frank N. Robinson, all officers and directors of the defendant corporation, alleging that they had breached their fiduciary duty to the corporation by usurping a corporate opportunity and benefiting personally thereby. The trial court found the issues for the defendants and the plaintiff has appealed to this court.

Error is claimed in the refusal to find material facts claimed to be admitted or undisputed; in finding material facts without evidence; in the conclusions reached; and in the overruling of the plaintiff's claims of law. The trial judge noted in the file that although several of the plaintiff's requested draft findings "may be said to be admitted or undisputed facts, . . . to include them in the finding would add nothing of value and protract a finding already lengthy which is deemed to recite the essential subordinate facts of the case." We agree that no additions to the finding will benefit the plaintiff in presenting the questions of law which it wishes to have reviewed by this court. *State* v. *Carnegie,* 158 Conn. 264, 266, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. Of the remaining assignments of error directed at sixteen findings of facts, six have been expressly abandoned, and ten are supported by the evidence printed in the appendix to the defendants' brief.

T. H. Canty and Company, Inc., was formed by merger in 1940 for the principal purpose of conducting a real estate and insurance business. Five thousand shares of no par value stock were authorized and eventually issued. Some time after the merger there was a "loose informal understanding" among some of the directors that if a director learned that any stockholders wished to sell their stock, he would allow the corporation to purchase it instead of purchasing it for himself. Subsequently, many additional directors were elected who were not informed of that informal understanding. Over a thirty-year period, T. H. Canty and Company, Inc., purchased an average of fifty shares per year of its own stock, although there were several years when no pur-

chases were made and some occasions when it refused to buy its own stock. The various stock purchases by the company averaged $115 per share.

In August of 1971, Robert A. Katz, who had served as a director of T. H. Canty and Company, Inc., for seven years, announced that he would not be a candidate for reelection to the board. At that time Katz had access to all information concerning the corporate affairs and he knew the values of all the properties owned by the corporation. The individual defendants, among others, were subsequently elected or reelected to serve as officers and directors on August 17, 1971. Katz then made a contingent offer on behalf of the plaintiff, Katz Corporation, to purchase at least fifty-one percent of the outstanding stock of T. H. Canty and Company, Inc., at $250 per share. The executive committee rejected that offer because it was considered too low. Katz then made an offer of $275 per share which was also rejected. In the fall of 1971, the directors learned that others were considering making offers for the corporation's stock and it was decided to seek the services of an outsider to make a valuation of the assets and net worth of the company. The outside valuation was deemed unnecessary, however, when the defendant Robinson and another director jointly valued the stock to be worth $380 per share. That figure was later reduced to $360 per share, representing the liquidation value of the corporation not including liquidation expenses.

In October of 1971, the directors decided that any offers for the purchase of company stock should be made by October 29 when the directors would consider them. It was understood that there was no obligation on the part of the corporation or share-

holders to accept or reject any such offers. Katz Corporation then increased its offer to $300 per share. During discussions between Katz and the defendant Keogh, Katz indicated that if the plaintiff were to gain control of T. H. Canty and Company, Inc., the present officers and directors would not be retained; the insurance business would be made a subsidiary of the plaintiff corporation; and the real estate holdings of T. H. Canty and Company, Inc., would be liquidated in order to get the insurance business "for nothing."

At a stockholder's meeting on November 1, 1971, the stockholders were informed that the stock was initially valued at $380 per share and subsequently reduced to $360 per share before liquidation expenses. The stockholders were further advised that Katz Corporation had made an offer of $300 per share. At that meeting, the shareholders were asked to vote on three options: 2011 shares were voted to sell stock, 1817 were voted to retain stock and continue the company, 259 were voted to liquidate the company and 576 were undecided. By letter dated November 5, 1971, Katz Corporation continued its offer of $300 per share contingent, however, upon acquiring sixty-seven percent of the stock.[1]

In the latter part of November, the defendants learned that a substantial amount of the company's stock had been turned over to a local bank pursuant to the plaintiff's tender offer. They believed that a takeover was inevitable unless they could buy

[1] It was noted by the trial court that an affirmative vote of the holders of two-thirds of the voting power of the outstanding shares of stock is ordinarily required to liquidate or to sell substantially all of the corporation's assets. General Statutes §§ 33-372 (d), 33-376 (c).

enough stock to take control themselves. They proceeded to borrow $580,000 for this purpose and, on November 24, 1971, they started to acquire stock at $310 per share. On November 25, Thanksgiving Day, the plaintiff sent telegrams to all stockholders increasing its offer to $325 per share, still conditioned upon obtaining at least sixty-seven percent of the stock. The next day, the individual defendants acquired additional stock at $325 per share and voluntarily paid $325 per share to all stockholders who had sold stock to them on November 24 for $310 per share. At the time the defendants solicited stockholders for the sale of their stock, they disclosed that liquidating dividends might be received in excess of the $325 per share being offered. The plaintiff's offers did not make such disclosures. The individual defendants acquired 1849 shares of stock at $325 per share which, when combined with stock owned by them or their families, totaled 3313 shares or slightly less than two-thirds of the outstanding stock of T. H. Canty and Company, Inc. The trial court found that T. H. Canty and Company, Inc., did not have sufficient cash or liquid assets to enable it to purchase the 1849 shares of stock acquired by the individual defendants. At a meeting of the shareholders in December, 1971, it was voted almost unanimously to liquidate the corporation.

The complaint alleged in substance that the defendants knew, on the basis of inside information, that the stock of T. H. Canty and Company, Inc., had considerably more value than the $325 offered by them to individual stockholders; that they knew of the "prior course of conduct of buying stock for the corporation"; that by purchasing stock for themselves they usurped a corporate opportunity and

made "a personal profit which would otherwise inure to the benefit of the corporation"; and that they were in breach of their fiduciary duty to the corporation. The relief requested included an accounting for all purchases and sales of stock made by the defendants on and after August 1, 1971, and an order requiring them to sell and deliver all such stock to the T. H. Canty and Company, Inc., for the same consideration paid by them.

The trial court concluded that T. H. Canty and Company, Inc., had no interest in its outstanding stock and that the defendants had not violated their fiduciary duty owed to the corporation.

An officer and director occupies a fiduciary relationship to the corporation and its stockholders. *Arrigoni* v. *Adorno,* 129 Conn. 673, 681, 31 A.2d 32. He occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all his relationships with the corporation. General Statutes § 33-323; *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 534, 218 A.2d 526; *Massoth* v. *Central Bus Corporation,* 104 Conn. 683, 689, 134 A. 236; *Mallory* v. *Mallory Wheeler Co.,* 61 Conn. 131, 139, 23 A. 708; see Cross, Corporation Law in Connecticut § 6.8; 3 Fletcher, Private Corporations (Perm. Ed. Rev. 1975) §§ 838, 850.

The first issue raised by the plaintiff is that the defendants had the burden of proving fairness and "good faith" where their conduct has been challenged as a breach of fiduciary duty. The plaintiff relies on *Massoth* v. *Central Bus Corporation,* supra, wherein it was stated that a director has the burden of showing that any personal dealing with the corporation is fair, in good faith, and for adequate consideration. See *Osborne* v. *Locke Steel Chain Co.,*

supra; *Sarner* v. *Fox Hill, Inc.,* 151 Conn. 437, 441, 199 A.2d 6. Those cases, however, concern contracts or transactions between a corporation and its directors. See General Statutes § 33-323. The facts of the present case do not involve such a contract or transaction. Here, the acts complained of, stock purchases by directors and officers from shareholders of the corporation, are alleged to have been done in derogation of a corporate opportunity. The initial burden is on the plaintiff to prove that there was a corporate opportunity. See *Colorado & Utah Coal Co.* v. *Harris,* 97 Colo. 309, 312, 49 P.2d 429. Without such a showing, there is no cause to question the "good faith" or fairness of the officers and directors.

"The doctrine of 'corporate opportunity' . . . is but one phase of the cardinal rule of 'undivided loyalty' on the part of fiduciaries. In other words, one who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." 3 Fletcher, op. cit. § 861.1, p. 208; see *Burg* v. *Horn,* 380 F.2d 897, 899 (2d Cir.). In a leading case on the corporate opportunity doctrine the Supreme Court of Delaware stated the rule as follows: "[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is . . . in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if,

in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired." *Guth* v. *Loft, Inc.*, 23 Del. Ch. 255, 272, 5 A.2d 503.

In this case, the plaintiff contends that it was an avowed business purpose of T. H. Canty and Company, Inc., to acquire all outstanding stock for reduction to treasury; that that course of conduct had been followed for over thirty years; and that the individual defendants should first have presented the opportunity to purchase stock to the corporation by calling a directors' or shareholders' meeting. That argument is untenable for two reasons.

First, the plaintiff has failed to establish that the corporation had an avowed business purpose in purchasing its own stock or that it had an interest or reasonable expectancy in so doing. The trial court found that the "informal agreement" among the directors to defer to the corporation when stock became available was obsolete. Many new directors were never informed of that "understanding" and on some occasions the corporation refused to buy its own stock. The primary business purposes of the corporation were real estate and insurance ventures, not the purchase of its own securities. Indeed, § 33-358 of the General Statutes limits the ability of a corporation to acquire its own securities. There is no blanket prohibition against an officer or director's buying securities in his own corporation. See *DuPont* v. *DuPont*, 256 F. 129, 132–33 (3d Cir.), cert. denied, 250 U.S. 642, 39 S. Ct. 492, 63 L. Ed. 1185. Ordinarily, a corporation has no interest in

its outstanding stock and unless there is some reason or necessity for the corporation to purchase its outstanding stock, an officer or director does not usurp a corporate opportunity by making purchases for his own account. See *Equity Corporation* v. *Milton,* 42 Del. Ch. 425, 213 A.2d 439, aff'd, 43 Del. Ch. 160, 221 A.2d 494; *Northwestern Terra Cotta Corporation* v. *Wilson,* 74 Ill. App. 2d 38, 219 N.E.2d 860; *Hauben* v. *Morris,* 255 App. Div. 35, 5 N.Y.S.2d 721, aff'd, 281 N.Y. 652, 22 N.E.2d 482; *Vulcanized Rubber & Plastics Co.* v. *Scheckter,* 400 Pa. 405, 162 A.2d 400; 3 Fletcher, Private Corporations (Perm. Ed. Rev. 1975) § 862.

Second, the corporation became aware at the November 1, 1971, stockholders' meeting that over 2000 stockholders desired to sell their stock. The market price was then the $300 per share offered by the plaintiff. The corporation did not seek to purchase its own stock at that point, however, and for good reason. Its cash on hand and liquid assets were insufficient to enable it to make such a substantial purchase. There can be no expectancy in a transaction unless the corporation is financially able to undertake it. *Guth* v. *Loft, Inc.,* supra; *Hart* v. *Bell,* 222 Minn. 69, 81, 23 N.W.2d 375; *Gauger* v. *Hintz,* 262 Wis. 333, 352, 55 N.W.2d 426.

The trial court was correct in concluding that T. H. Canty and Company, Inc., had no interest in its outstanding stock or in the dealings between its stockholders.

The complaint also alleges that the individual defendants used inside information for their own profit and gain in their November, 1971, stock purchases from other shareholders of T. H. Canty and Company, Inc. It has been recognized that inside

trading by a corporate fiduciary may be a violation of the common-law duty which he owes to his corporation.[2] *Davidge* v. *White*, 377 F. Sup. 1084 (S.D. N.Y.); *Brophy* v. *Cities Service Co.*, 31 Del. Ch. 241, 70 A.2d 5; *Diamond* v. *Oreamuno*, 24 N.Y.2d 494, 248 N.E.2d 910; see also *Schein* v. *Chasen*, 478 F.2d 817, 825 (2d Cir.), vacated, sub nom. *Lehman Brothers* v. *Schein*, 416 U.S. 386, 94 S. Ct. 1741, 40 L. Ed. 2d 215. In *Diamond* v. *Oreamuno*, supra, the New York Court of Appeals held that an officer or director who uses material inside information is accountable to his corporation for gains from transactions in the corporation's stock.

In the present case, however, the only "inside information" possessed by the defendants was made public at the November 1, 1971, stockholders' meeting when the $380 and $360 per share stock valuations were disclosed to the stockholders. The defendants also disclosed to the stockholders from whom they purchased stock that they might receive liquidating dividends in excess of the $325 per share that they were offering. Finally, the trial court was unable to ascertain whether the defendants would realize any gain on the shares of stock acquired by them on and after November 24, 1971, since the winding up of the corporation was incomplete and certain contingent liabilities could not be calculated.

The plaintiff failed to prove its allegations that the defendants personally gained or that they traded

---

[2] See also §§ 10 (b) and 16 (b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j (b) and 78p (b); rule 10b-5 of the Securities and Exchange Commission, 17 CFR § 240.10b-5. In addition, some states have imposed a fiduciary duty on officers and directors to disclose material inside information to the individual shareholders with whom they trade. See, e.g., *Jacobsen* v. *Yaschik*, 249 S.C. 577, 155 S.E.2d 601, and other cases collected at note, 7 A.L.R.3d 500.

on the basis of inside information. The trial court was correct in concluding that the individual defendants did not violate their fiduciary duty owed to T. H. Canty and Company, Inc.

There is no error.

In this opinion the other judges concurred.