[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was instituted in September 1988 and proceeded to trial on a six count Third Revised Complaint dated April 9, 1990. The answer of the defendant is dated May 23, 1990.
Trial of this case commenced in November 1994 over an eight day period; final argument having been presented July 28, 1995.
In 1988 the defendant, hereinafter "Dowiak" and the plaintiff Richard Ruhling hereinafter "Ruhling" were major stockholders, officers and employees of the plaintiff, United Component Inc., hereinafter "UCI." Ruhling was president and Dowiak was vice president. The distribution of stock was that Ruhling owned 53% and Dowiak owned 41%. The other stock distribution is unimportant CT Page 8752 in this case.
UCI is a manufacturers representative business; i.e., UCI sells electronic products of manufacturers to distributors or companies who use the products in their business. In 1988 and for some time prior, Aromat Corp., a manufacturer of relays, was the principal source of UCI's business. From all the evidence UCI in 1988 could not financially survive without the Aromat account. In addition to losing Aromat, UCI lost other less meaningful accounts. Also during this period of a drowning organization UCI lost the other small shareholder, Steven Vestey, who in Dowiak's view was a future key player for the success of UCI.
Aromat terminated the contractual relationship with UCI March 9, 1988. Dowiak was on vacation in Florida when he received a telephone call from Julia Taylor, secretary of UCI, that Aromat terminated UCI's as a "rep". Dowiak returned immediately to Connecticut and met with Ruhling. Dowiak asked Ruhling what if anything or what strategy Ruhling had to get the Aromat line back. By speaker phone in presence of Dowiak, Ruhling called Nemec, the sales manager of Aromat who told Ruhling there was no possibility for UCI to get the Aromat line back. Nemec advised it was a business decision that was final. Dowiak further testified that he was paid a salary which would be effected since 40% of the commissions from Aromat would go to UCI thereby affecting his future salary. In mid April discussions were held between Ruhling and Dowiak about a replacement line for Aromat. Dowiak learned in early April that UCI lost another account, American KSS and that he was shocked he had to learn it from some source other than Ruhling. In mid April Dowiak informed Ruhling that it made no sense for him to stay with UCI since they were losing lines to represent. Ruhling asked Dowiak if he would stay if they were able to get a replacement line for Aromat. In mid April Dowiak told Ruhling he was definitely going to leave. Ruhling asked if Dowiak would stay if they could get the Omron line which was a competitor of Aromat. On May 9 or May 10, 1988 a meeting was held with the president of Omron and lay people of AT T to persuade Omron to name UCI as their representative. Dowiak handled the AT T account for Aromat. Omron did not employ UCI for their line. In late June, Dowiak told a fellow employee they did not get Omron and he was leaving by saying "I have to do what I have to do." Dowiak had learned on or about May 18, 1988 when Ruhling told him that they did not get the Omron account. Dowiak sent to Aromat a letter resume May 3, 1988 after he had told Ruhling he was leaving UCI (Exhibit G) and after they had lost several other CT Page 8753 lines. Dowiak submitted sales information to Aromat at their request after May 3, 1988. Dowiak was given a "rep number" by Aromat. On May 25, 1988 Aromat was asked for samples by AT T that were shipped to Dowiak on June 30, 1988. (Exhibit I). Dowiak testified that he did not rep Aromat until after May 31, 1988. Dowiak signed his rep agreement on May 31, 1988 with Aromat. Between May 17 and May 31, 1988 Dowiak had visited with Aromat to return relays and at request of one Blackowski of Aromat provided him information for a rep number, see above. Although Dowiak was seeking to be an Aromat rep or to be an employee in early May, he did not know nor did he expect to be a rep until his visit on May 31, 1988 when he was given a contract to sign. Dowiak signed the contract to be an Aromat rep and sent his resignation on May 31, 1988 (Exhibit A). Dowiak had attempted to speak to Ruhling between May 23 and May 31 to further discuss his resignation. Ruhling failed to set up a meeting during this time.
First Count
The First Count is based upon the claim that Dowiak breached his fiduciary duty of fairness, candor, loyalty and trust to the corporation UCI. It is alleged inter alia that Dowiak breached his duty by "surreptitiously intercepting and diverting a valuable corporate opportunity by agreeing while employed by UCI to represent the Aromat Company and by specifically misrepresenting to the corporation that he had made plans not to leave the corporation. In essence the plaintiff UCI is claiming by dealing with Aromat after the Aromat line was lost that he was usurping a corporate opportunity of UCI.
The defendant Dowiak, argues that there was not a usurpation.
 "The initial burden is on the plaintiff to prove that there was a corporate opportunity. See Colorado Utah Coal Co. v. Harris, 97 Colo. 309, 312 49 P.2d 429. Without such a showing there is no cause to question the good faith or fairness of the officers and directors." 168 Conn. 201 (1975).
From all the voluminous evidence at trial this court cannot conclude that Dowiak usurped a corporate opportunity. UCI had lost the Aromat line. The decision was final. There was no showing that Dowiak persuaded Aromat to leave UCI. Aromat's decision to terminate UCI was because of UCI's poor performance. CT Page 8754 Joseph Nemec of Aromat testified that if Dowiak was part of UCI they would in no way use UCI to maintain Aromat sales to AT T. UCI's argument that a successful arbitration between Aromat and UCI on which Aromat paid UCI substantial sums of money with respect to the termination is not relevant to this case since the arbitration involved different issues and claims that are not now made against Dowiak. Aromat would not renew any contractual relationship with UCI.
Plaintiff UCI argues:
 "A corporate officer's mere preparation to compete before he resigns is not sufficient to constitute a breach of corporate duty, it is the nature of the preparation that is significant" . . .
 An officer of a corporation is not required to disclose his preparations to compete with the corporation in every case; failure to disclose will render him liable for a breach of fiduciary duty only where the particular circumstances render nondisclosure harmful to the corporation." Bancroft Whitney Co. v. Glen, 64 Cal.2d 327, 411 P.2d 921
24 ALR 3d 795.
The argument set forth by plaintiff UCI supports Dowiak's position in this case. Dowiak may have been taking on the account of Aromat but the line had already been lost by UCI. Contrary to UCI's argument here is no evidence that Dowiak "cut out" UCI. True it may have been as UCI put it leaving a sinking ship by way of "the stern rope"; there is no evidence that Dowiak could have saved the sinking ship. Quite to the contrary from all the testimony UCI had sunk and neither Dowiak or Ruhling could have rescued it. Dowiak had no place to go since there was no other line to replace Aromat. This court cannot conclude that Dowiak intercepted and diverted accounts surreptitiously in breach of his fiduciary duty as an officer of UCI. The plaintiffs UCI or Ruhling did not meet their burden to establish that Dowiak did anything harmful to the corporation. Accordingly, judgment is entered in favor of the defendant as to the First Count.
Count Two — Cutpa
CT Page 8755
This count is brought by Ruhling. All the evidence presented in this case as to the Second Count is based upon the alleged usurpation of the corporate relationship between Aromat and UCI and what Dowiak did concerning this relationship. Cutpa, Connecticut General Statute Section 42-110(b) prohibits unfair, deceptive or immoral acts in the conduct of business for which damages both compensatory and punitive may be awarded. The plaintiff must show:
(1) that the act or practice is unlawful and offends public policy either by statute, common law or any other established concept of fairness;
(2) that it is immoral, unethical, oppressive or unscrupulous; and,
(3) whether it causes substantial injury to consumers, competitors or other businessmen.
Dowiak argues that Cutpa is inapplicable in this case because it does not apply to conduct by an employer or employee during employment relationship since this relationship does not fall within the definition of "trade or commerce." Quimby v. KimberlyClark Corp., 28 Conn. App. 660, 670 (1992).
This court agrees with argument of the defendant. The claim of the Second Count is based upon Dowiak's actions or nonaction set forth in the First Count. Although Connecticut recognizes that a recovery may be made if one takes either an individuals or company's customer, see Larson Chelsey Realty Co. v. Larson,232 Conn. 480 (1995), there can be no recovery when there is no corporate opportunity or taking of the company's customers. As this court has already concluded Dowiak did not take away any customers of Ruhling or UCI particularly Aromat as discussed, and accordingly judgment may enter in favor of the defendant as to the Second Count.
Third Count
This count alleges a breach of an employment agreement. The plaintiff alleges an agreement indefinite as to terms and therefore terminable at will of either party. During the employment period the employee is held to exercise good faith, loyalty and honesty during the employment relationship. Town andCountry House and Home Services Inc. v. Evans, 150 Conn. 314, 317
CT Page 8756 (1963). In the absence of any restrictive covenant, a former employee may solicit business or customers of his former employer or during his former employment. Republic Systems and ProgramInc. v. Computer Assistance Inc., 332 F. Sup. 619, 627 (D. Conn. 1970). The plaintiff claims that during the period of November 1987 and May 31, 1988 that Dowiak performed services for himself and not for UCI and is entitled to recover damages for that period. The plaintiff asserts that during that period he lulled his employer into believing he was working for UCI when he was working for himself in dealing for the Aromat line for AT T and is entitled to the amount of business for Aromat with AT T and a loss of the value of UCI as a business because of the loss of Aromat. Again this is a claim arising out of UCI's loss of the Aromat account. This court cannot conclude from all the evidence that Dowiak breached his employment contract with UCI since he stayed with UCI until they could not get a replacement line. Both Dowiak and Ruhling knew the adverse impact on UCI by the loss of the Aromat line. Both during this period of November 1987 and May 31, 1988 tried to get a substitute line. There is no evidence to conclude that Dowiak substantially contributed to the loss of the value of UCI or that he did not perform his duties to UCI after the loss of the Aromat line. Accordingly, judgment is entered in favor of the defendant as to the Third Count.
Count Four — Unjust Enrichment
The plaintiff relies on the maximum in equity that for every wrong there is a remedy and that the remedy in this case is to order an accounting and constructive trust for the profits that Dowiak received from his contract with Aromat. Aromat has perhaps already paid for the benefits it derived by employing Dowiak in the arbitration.
 "The right for recovery in unjust enrichment is equitable it bases that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." (Citations omitted).
The plaintiff has the burden to show that defendant in some way benefitted [benefited] and did not pay for the benefit to the detriment of the plaintiff. The plaintiff asserts that he used UCI's assets (via his salary and expenses) to obtain the Aromat line for himself, when he should have been doing that for UCI. Again the CT Page 8757 basis for the claim under this count is founded in UCI's claim of a breach of contract as discussed under the Third Count.
This court cannot conclude from all the evidence that it should impose equitable principles to award damages to the plaintiff under the theory of unjust enrichment.
UCI lost the benefits of its contract with Aromat when that contract was terminated. This court will not reinstate the benefits it lost and essentially give back to UCI the value of that agreement. Accordingly, judgment may enter in favor of the defendant as to the Fourth Count.
Fifth Count — Tortious Interference
This count was not briefed and withdrawn in final argument and accordingly, judgment may enter in favor of the defendant as to the Fifth Count.
 Sixth Count — Fraud and Misrepresentation on Behalf of Richard Ruhling
In this count of the Third Amended Complaint it is alleged that on May 10, 11 and 12, 1988 that the defendant and the plaintiff were attending a trade show in Boston and that the defendant had stated, contrary to rumors notwithstanding, that he was not leaving UCI. That the statement was untrue and misleading and uttered to defraud the corporation UCI. Further that this statement was reckless; wilful and malicious with the purpose to prevent UCI to fill the area covered by the defendant.
The elements of a fraudulent misrepresentation claim is as follows:
1. A false representation was made as to a statement of fact;
2. The statement was untrue and was known by the Defendant to be untrue or was made in careless disregard as to whether it was true or false;
3. The statement was made to induce another party to act; and
4. The other party did act to his injury.
Kavarco v. T.J.E. Inc., 2 Conn. App. 294, 295-6 (1984); Hart,CT Page 8758Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619,629 (1988). In addition, the alleged misrepresentation must relate to a statement of fact and not to an opinion and must be established by clear and convincing evidence. Parva v. VanechHeights Construction Co., 159 Conn. 512-515 (1970).
From the evidence adduced at trial the plaintiff has failed to show that the statements if true were made to induce Ruhling or UCI not to make efforts to obtain other lines to cover the AT T account or to service the area. Both Ruhling and Dowiak knew at the time alleged in this count that a replacement line was needed. Further, Dowiak who was still uncertain had agreed to stay if another replacement line was obtained. Both failed to get such a replacement line. Dowiak gave only an opinion as to his future employment. The allegations made in this count are not supported by any evidence. Accordingly, judgment may enter in favor of Dowiak on the Sixth Count.
Judgment is hereby entered in favor of the defendant on all counts of the Third Amended Complaint.
Frank S. Meadow State Trial Referee