[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (NO. 114)
This action was commenced against all defendants on April 2, 1996. In count one of his three count complaint, the plaintiff, Scott Levine, Administrator C.T.A. of the estate of Robert Joseph Levine a/k/a Robert J. Levine, brings a shareholder's derivative claim against the defendants, Lawrence Levine, Sandra Levine, Ronald Mathieu (Mathieu) and David Levine, alleging that the defendants breached their fiduciary duty to Rapid Car Wash, Inc. (RCW). Count two alleges a claim against Mathieu individually, as holder of the plaintiff's decedent Robert Levine's voting proxy, for breach of his fiduciary duty. Count three alleges that all four defendants. as officers, directors, and majority or controlling shareholders breached their fiduciary duties to the plaintiff's decedent.
On November 12, 1997, the defendants filed a motion for summary judgment on the ground that the plaintiff's claims are barred by the statute of limitations.[1] In support, the defendants filed an accompanying memorandum of law and documentary evidence.[2] The plaintiff filed an objection to the motion for summary judgment on January 26, 1998. The plaintiff also filed a memorandum of law in support of his opposition and documentary evidence.[3]
The following facts are not in dispute. RCW is a Connecticut corporation with its principal place of business at 442 Colman Street, New London, Connecticut. As of May 1980, the plaintiff's decedent Robert Levine was an officer, director, and majority shareholder of RCW, and managed the business of the corporation. Due to issues regarding Robert Levine's health, on May 6, 1980, Robert Levine executed an assignment of his voting rights in RCW to Mathieu. During an annual RCW shareholders' meeting on June 2, CT Page 6072 1980, at which Mathieu voted Robert Levine's shares, the shareholders elected Lawrence Levine president and treasurer of the corporation, and elected Mathieu vice-president and secretary of the corporation. Also, at that meeting, the shareholders authorized Lawrence Levine to personally loan RCW $59,250. On August 27, 1980, the shareholders approved the issuance of three hundred shares of RCW common stock to Lawrence Levine in consideration of his forbearance from calling the $59,250 loan. On August 5, 1982, Attorney Michael Rakosky sent a letter to Lawrence Levine, on behalf of the plaintiff's decedent Robert Levine, inquiring as to the effect of the loan on Robert Levine's stock and seeking access to the stock transfer records.[4] At all relevant times, the defendants have been directors, officers, and/or shareholders of RCW. The plaintiff, Scott Levine and his decedent Robert Levine have, at all relevant times, been stockholders of RCW.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.]" (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554, ___ A.2d ___(1998).
Relying upon the August 5, 1982 letter from Attorney Rakosky to Lawrence Levine, the defendant moves for summary judgment on the ground that the plaintiff's action is barred by the three year statute of limitations set forth in General Statutes §52-577. The defendant argues that the letter is proof that the plaintiff became aware of the facts giving rise to this action in August of 1982, and that the statute of limitations on this action ran in August of 1985. The plaintiff does not contest that CT Page 6073 General Statutes § 52-577 is the applicable statute of limitations. Rather, the plaintiff argues that the defendants' alleged misconduct was not discovered until Robert Levine's death in 1994 and that, therefore, this action, commenced on April 2, 1996, is timely.
"The three year provision of § 52-577 is applicable to all tort actions other than those excepted therefrom by §52-584 or other sections." Lambert v. Stovell, 205 Conn. 1, 4,529 A.2d 710 (1987). "Actions for breach of fiduciary duty are governed by the three-year statute of limitations set out in General Statutes § 52-577." Bill v. Emhart Corporation,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 538151 (October 24, 1996, Hennessey, J.). General Statutes § 52-577 provides, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
Both parties are mistaken in arguing that the statute of limitations set forth in section 52-577 is triggered by the plaintiff's discovery of the facts in question. "In construing our general tort statute of limitations, General Statutes §52-577 . . . we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." Fichera v. MineHill Corporation, 207 Conn. 204, 212, 541 A.2d 472 (1988). "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs."S.M.S. Textile Mills. Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790, 631 A.2d 340 (1993). Accordingly, the statute of limitations began to run on the present action when the initial acts complained of occurred on June 2, 1980, at the RCW annual shareholders meeting. Since this action was commenced on April 2, 1996, the three year statute of limitations set forth in section 52-577 bars the present action unless the statute of limitations is tolled.
The plaintiff argues that his claims are not barred by the statute of limitations because they result from a continuing course of conduct which tolls the statute. The plaintiff argues that Mathieu's alleged unfair use of the proxy resulted in his obtaining a controlling interest in RCW, and that control has permitted the defendants to engage in a course of conduct, CT Page 6074 continuing through the present, of paying themselves excessive salaries which have looted corporate assets.[5] In response, the defendant states "the multiple notices to Robert Levine as shareholder of the corporation undercut the credibility of those claims."
"[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [the Connecticut Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Blanchette v. Barrett, 229 Conn. 256, 275,640 A.2d 74 (1994).
"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Id., 276. "The court seems to say that it is fair to have the `continuous course of conduct rule' operate where there is a fiduciary relationship or relationship between two parties so that one of the parties has an ongoing responsibility to right any wrongs he or she may have done or bring them to the injured party's attention — the latter party relying on the relationship of trust might very well not be as attentive to protecting his or her interests, thus the rigor of the limitations statutes should be relaxed." Lestrangev. Kontout, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 046929 (November 4, 1997, Corradino, J.). "The continuous course of conduct doctrine is conspicuously fact-bound." (Internal quotation marks omitted). Sanborn v. Greenwald,39 Conn. App. 289, 295, 664 A.2d 803 (1995) (continuing course of conduct doctrine did not apply to legal malpractice claim commenced in 1992 where negligence occurred in 1985 since the attorney and client had no fiduciary relationship after 1985);Blanchette v. Barrett, supra, 229 Conn. 276.
"An officer and director occupies a fiduciary relationship to the corporation and its stockholders. . . . He occupies a position of the highest trust and therefore he is bound to use CT Page 6075 the utmost good faith and fair dealing in all his relationships with the corporation. . . . Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." (Citation omitted). Pacelli Bros. Trans. Inc. v.Pacelli, 189 Conn. 401, 407, 456 A.2d 325 (1983); KatzCorporation v. T.H. Canty Co., 168 Conn. 201, 207, 362 A.2d 975
(1975).
In the present case, the defendants, as officers and directors of RCW, owed a fiduciary duty to the plaintiff and the plaintiff's decedent Robert Levine. In his complaint, the plaintiff alleges that the defendants engaged in a continuing course of conduct from 1984 to the present, specifically, looting corporate assets, which violated their fiduciary duties to the stockholders. The defendants offer no evidence indicating a lack of material fact to whether the defendants violated their fiduciary duties. Accordingly, since "[t]he continuous course of conduct doctrine is conspicuously fact bound," (Internal quotation marks omitted) Sanborn v. Greenwald, supra,39 Conn. App. 295, the defendants motion for summary judgment on the ground that the plaintiff's action is time barred is denied. This court finds that issues of material fact remain as to whether the defendants engaged in a continuous course of conduct that violated their fiduciary duties from 1984 to the present, which would toll the statute of limitations set forth in General Statutes § 52-577.
Secondly, the defendants move for summary judgment as to counts one and three on the ground that General Statutes § 33-323, in effect at the time of the alleged conduct, shields the defendants from liability since, pursuant to that statute, a director does not incur liability for self dealing if his interest is fully disclosed, and the act is approved by the shareholders.[6] The defendants also argue where the transaction was in good faith, fair to the corporation, and for adequate consideration, there is no conflict of interest or unfair dealing.
The plaintiff argues that Lawrence Levine and Mathieu approved the loan in disregard of corporate authorization, and that the loan was not entered into for adequate consideration since Lawrence Levine agreed to accept 300 shares of RCW stock in consideration for his "present" forbearance on calling the loan. The plaintiff argues that this was inadequate consideration since Lawrence Levine could redemand payment of the loan at anytime in the future. The plaintiff argues that Lawrence Levine demanded repayment of the loan twelve days after the money was lent to the CT Page 6076 corporation, and that the entire loan was a "sham transaction" entered for the purpose of giving Lawrence Levine a controlling interest in RCW.
The defendants' argument speaks only to the alleged misconduct regarding the loan transaction. It does not address the plaintiff's allegations that the defendants have looted corporate assets by paying themselves excessive salaries (Count I). Nor does it address the plaintiff's allegation that Mathieu breached his fiduciary duty to the plaintiff's decedent Robert Levine (Count I). Further, whether the loan transaction was fair to the corporation and whether proper consideration was given for the loan are disputed issues of material fact.
Accordingly, the defendants' motion for summary judgment is denied.
Koletsky J.