[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 113)
This dispute arises out of a suit by an employee-shareholder against the majority shareholders, officers and directors claiming personal liability for their breach of their fiduciary duty to him and the corporation for unlawful termination of employment. CT Page 15741
 PROCEDURAL POSTURE
On May 26, 1998, the plaintiff, John Hart, filed an eight-count complaint against the defendants Mill Plain Autobody d/b/a Traynor Autobody (hereinafter Traynor Autobody), Mill Plain Investments Corporation, Inc. (hereinafter Mill Plain), Richard Schmidt (Schmidt), Loreto Bernardelli (Bernardelli) and Luciano Franzese (Franzese). On November 17, 1998, Schmidt, Bernardelli and Franzese (hereinafter the defendants) filed a motion to strike the plaintiff's complaint in its entirety on the ground that it failed to state claims upon which relief could be granted. On December 2, 1998, the plaintiff filed an objection to the motion to strike. On March 18, 1999, this court issued a ruling on the motion to strike, granting the motion as to counts one, three and five, and denying the remaining counts.
On April 5, 1999, the plaintiff filed an eight-count substitute complaint, pursuant to Practice Book § 10-44. On April 30, 1999, the defendants filed the instant motion to strike counts one, three and five of the plaintiff's substitute complaint on the same ground as before resulting in the current dispute before the court.
 I. FACTS
The facts relevant to the determination of this motion are as follows. In 1992, Traynor Autobody and Mill Plain were incorporated by the defendants, the plaintiff and Richard Zacchia (Zacchia). Mill Plain is the record owner of the premises on which Traynor Autobody is located and it also leases equipment and machines to Traynor Autobody. The two companies are closely held corporations with a total of 1000 shares of common stock issued and outstanding each. The shares are equally owned by the defendants, the plaintiff and Zacchia.
The defendants and the plaintiff were directors, officers and employees of the two corporations. Specifically, Schmidt served as the president, Franzese the secretary, and Bernardelli and the plaintiff as the vice-presidents. In 1997, various problems developed between the plaintiff and the defendants, resulting in the plaintiff's removal from both the board of directors and his position as a vice president. On July 9, 1997, the defendants terminated the plaintiff's employment with Traynor Autobody, although his last day of work was July 8, 1997.
 II. DISCUSSION
CT Page 15742
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Peter-Michael Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). The court must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. If facts provable in the complaint would support a cause of action, the motion to strike must be denied. Id., 270-71. A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).
 A. Breach of Fiduciary Duty
The plaintiff alleges that the defendants, in their capacities as directors, officers and majority stockholders of Traynor Autobody, breached their fiduciary duty to him by removing him, without cause, from both the board of directors and his position as vice president of Traynor Autobody. Moreover, the plaintiff alleges that the defendants, also without cause, terminated his employment with Traynor Autobody and on several occasions attempted to coerce him into signing a buyout agreement, which would have the effect of reducing the value of his 200 shares of the corporation's stock relative to the value of the other issued and outstanding shares.
The defendants, in response, argue that the plaintiff has failed to allege sufficient facts to support his claim of breach of fiduciary duty. Moreover, the defendants argue that count one of the plaintiff's substitute complaint contains the same flaw as that contained in his original complaint, namely, it fails to allege any fraudulent conduct, which is a predicate for a claim of breach of fiduciary duty.
As a preliminary matter, piercing the corporate veil to enable the imposition of personal liability is rarely an appropriate remedy. See Banks v. Vito, 19 Conn. App. 256, 263,562 A.2d 71 (1989). The rare and acceptable legal basis for piercing occurs when there is a sufficient basis for a claim of breach of fiduciary duty based on fraudulent acts of individualswho occupy a fiduciary relationship. Id. Indeed, authority exists in this state supporting breach of fiduciary duty actions as a mechanism for holding directors, officers and stockholders CT Page 15743 personally liable for engaging in fraudulent acts. See KatzCorporation v. T. H. Canty Co., 168 Conn. 201, 208-09,362 A.2d 975 (corporate directors and officers may be liable for breach of fiduciary duty owed to corporation if proven that they usurped corporate opportunity); Pacelli Bros. Transportation, Inc. v.Pacelli, 189 Conn. 401, 407-08, 456 A.2d 325 (1983) (officers and directors occupy fiduciary relationship to the corporation and stockholders; the misappropriation of corporate funds and the failure to disclose information about the misappropriation may result in liability for breach of fiduciary duties); Banks v.Vito, supra, 19 Conn. App. 262 (controlling majority stockholders may be liable for breach of fiduciary duty where they seek to injure the minority stockholder by looting the corporation so that the minority stockholder would get nothing out of his assets); Yanow v. Teal Industries, Inc., 178 Conn. 262, 283,422 A.2d 311 (1979) (a majority stockholder may be liable for breach of fiduciary duty).
Personal liability is permitted on these rare occasions because officers and directors "[occupy] a position of the highest trust and therefore [they are] bound to use the utmost good faith and fair dealing in all [their] relationships with the corporation." (Internal quotation marks omitted.) Pacelli Bros.Transportation, Inc. v. Pacelli, 189 Conn. 401, 407, 456 A.2d 325
(1983). It is fundamental to the concept of a corporation that its affairs are to be controlled by a board of directors elected by a majority of the stockholders. Krall v. Krall, 141 Conn. 325,334, 106 A.2d 165 (1954). The rule of corporation law and of equity invoked is well-settled: that the majority has the right to control, but when it does so, it occupies a fiduciary relationship toward the minority, as much as the corporation itself or its officers and directors. Yanow v. Teal Industries,Inc., supra, 178 Conn. 283.
In order to support his allegations that the defendants breached their fiduciary duty, the plaintiff has to allege fraudulent conduct. The essential elements of an action in common law fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. Barbara Weisman, Trustee v. Kasper,233 Conn. 531, 539, 661 A.2d 530 (1995).
The plaintiff's complaint alleges that the individual CT Page 15744 defendants removed him from the board of directors and as an officer, however, he fails to allege that his removal was predicated upon a false representation made as a statement of fact by the defendants, made to induce reliance, which was known to be untrue at the time it was made and upon which he relied to his injury. See Barbara Weisman, Trustee v. Kasper, supra,233 Conn. 539. Indeed, the plaintiff's claims fail to allege any of the established grounds for the imposition of personal liability upon the directors, officers or majority stockholders. Nor does the plaintiff's complaint allege that the defendants attempted to usurp a corporate opportunity; see Katz Corporation v. T. H.Canty Co., supra, 168 Conn. 208-09; intentionally withheld information regarding their dealings with the corporation; seePacelli Bros. Transportation, Inc. v. Pacelli, supra,189 Conn. 407-08; engaged in improper transactions with the corporation; see Banks v. Vito, supra, 19 Conn. App. 263; or looted the corporation and breached their fiduciary duties to minority stockholders; see Yanow v. Teal Industries, Inc., supra,178 Conn. 283. Finally, the plaintiff does not allege that the corporation, or its stock, was harmed in anyway.
Therefore, the plaintiff's allegations even when construed in a light most favorable to him, are legally insufficient. SeeEsposito v. Connecticut College, Superior Court, judicial district of New London at New London, Docket No. 543055 (February 10, 1999, Mihalakos, J.). Accordingly, the defendants' motion to strike count one of the plaintiff's substitute complaint is hereby granted.
 B. Breach of Implied Contract
Count three of the plaintiff's substitute complaint alleges the breach of an implied employment contract between the plaintiff and the defendants. Specifically, the plaintiff alleges that he and the defendants agreed either by words, conduct or actions to do business in the form of a closely held corporation, in which they would be employees. The plaintiff further alleges that based upon the parties' substantial economic interest in the corporations, it was impliedly agreed that no stockholder-employee could be terminated from Traynor Autobody without just cause.
The defendants, in response, argue that the plaintiff's substitute complaint does not contain sufficient factual allegations to overcome the general rule that contracts of permanent or indefinite employment are terminable at will. The CT Page 15745 defendants further argue that the plaintiff does not sufficiently allege that the employment at will status has been modified through the agreement of the parties.
A contract implied in fact depends on an actual agreement that there be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct.Homecare, Inc. v. Acquarulo, 38 Conn. App. 772, 775, 663 A.2d 412
(1995). Nor can a contractual promise be created by plucking phrases out of context. There must be a meeting of the minds between the parties. Reynolds v. Chrysler First Commercial Corp.,40 Conn. App. 725, 730, 673 A.2d 573, cert. denied,237 Conn. 913, 675 A.2d 885 (1996). It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. Sandella v. Dick Corp.,53 Conn. App. 213, 219, 729 A.2d 813, cert. denied, 249 Conn. 926, ___ A.2d ___ (1999).
All employer-employee relationships not governed by express contracts involve some type of implied "contract" of employment. There cannot be any serious dispute that there is a bargain of sortie kind; otherwise, the employee would not be working. Gaudiov. Griffin Health Services Corp., 249 Conn. 523, 532, ___ A.2d ___ (1999). To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts. Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995).
Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will. Pursuant to traditional contract principles, however, the default rule of employment at will can be modified by the agreement of the parties. Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 234 Conn. 14-15.
In the present case, however, the plaintiff does not allege the existence of an express employment contract, thus, it can be inferred that the parties' employment relationship is governed by an implied employment contract. See Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., supra, 234 Conn. 13. A contrary CT Page 15746 conclusion cannot be reached because the plaintiff alleges that he worked at Traynor Autobody until his termination. See Gaudiov. Griffin Health Services Corp., supra, 249 Conn. 532. Applying the aforementioned principles, this court concludes that the plaintiff fails to sufficiently allege an agreement by words, actions or conduct so as to modify the terminable at will employment arrangement to one requiring just cause. See Torosyanv. Boehringer Ingelheim Pharmaceuticals, Inc., supra,234 Conn. 14-15. Indeed, the plaintiff fails to support his claim with any factual allegations of the terms of the implied employment agreement. See Novametrix Medical Systems, Inc. v. BOC Group,Inc., supra, 224 Conn. 215.
Accordingly, the plaintiff's allegations are legally insufficient to sustain an action for unlawful termination as claimed. Therefore, defendants' motion to strike count three of the plaintiff's substitute complaint is hereby granted.
 C. Intentional Infliction of Emotional Distress
Count five of the plaintiff's substitute complaint alleges that the defendants, as majority stockholders, directors and officers, intentionally inflicted emotional distress upon him. Specifically, the plaintiff alleges that his removal from the board of directors and from his position as vice president coupled with his termination as an employee of Traynor Autobody was excessive and unjustified, and caused him to suffer severe emotional distress. The plaintiff also alleges that the purpose of the defendants' attempt to coerce him into selling his stock at a discount rate was to intimidate him.
The defendants argue, however, that the plaintiff's claim is legally insufficient because he does not allege that their actions were outrageous or extreme. In addition, the defendants also claim that the plaintiff's factual allegations fail to allege that he suffered severe emotional distress.
In order to sufficiently plead a claim for intentional infliction of emotional distress, the plaintiff must allege the following: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. CT Page 15747Parsons v. United Technologies Corp., 243 Conn. 66, 101,700 A.2d 655 (1997). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Thus, it is the intent to cause such injury that is the gravamen of the tort. DeLaurentis v. New Haven, 220 Conn. 225, 267,597 A.2d 807 (1991).
Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.Whelan v. Whelan, 41 Conn. Sup. 519, 523, 588 A.2d 251 (1991). "[T]he plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life. . . ." Id., 522.
Using the aforementioned standards, it is clear that the plaintiff's allegations that the defendants voted him out as a member of the board of directors and as an officer of the corporations fail to satisfy the requirements of extreme and outrageous conduct. See Parsons v. United Technologies Corp.,
supra, 243 Conn. 101. On the same standards, the plaintiff also fails to satisfy the requirement that the claimed emotional distress be severe. Although the plaintiff uses the word "severe" to describe his emotional distress, his factual allegations fail to support this conclusion. Merely stating that the alleged emotional distress is severe is an unsupported legal conclusion and it is subject to a motion to strike. See Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215. Accordingly, the plaintiff's claim of intentional infliction of emotional distress claim is legally insufficient and the defendants' motion to strike count five of the plaintiff's substitute complaint is hereby granted.
 III. CONCLUSION
Based on the foregoing reasons, the defendants' motion to strike counts one, three, and five of the plaintiff's substitute complaint are hereby granted.
MELVILLE, J. CT Page 15748