ALBERT SANDELLA ET AL. *v.* DICK
CORPORATION ET AL.
(AC 17504)

Schaller, Spear and Healey, Js.

Argued January 21—officially released May 11, 1999

*Vincent J. Dowling*, for the appellant (defendant Maguire Group, Inc.).

*Karen K. Clark*, with whom, on the brief, was *Frank K. Usseglio*, for the appellee (defendant Metcalf & Eddy).

*Opinion*

SCHALLER, J. This appeal arises from the judgment on a cross claim for indemnification. In the main action, a jury found the defendant Dick Corporation and the defendant cross claimant, Metcalf & Eddy,[1] liable to the plaintiffs, Albert Sandella and his wife, Cheryl Sandella, for injuries sustained by the named plaintiff, an employee of the town of North Haven, in a slip and fall that occurred while he was working at a wastewater treatment plant in that town in July, 1990. The cross claim defendant, Maguire Group, Inc. (Maguire), appeals from the judgment rendered after the second phase of a bifurcated jury trial holding Maguire liable to Metcalf & Eddy on a claim for indemnification arising from a contract to indemnify and hold harmless.[2] Maguire claims that the trial court improperly (1) failed to set aside the jury's verdict and to render a directed verdict in its favor, (2) failed to find, as a matter of law, that Metcalf & Eddy was not entitled to indemnification and (3) failed to find, as a matter of law, that the indemnity agreement was void as a matter of public policy pursuant to General Statutes § 52-572k. We affirm the judgment of the trial court.

---

[1] In the main action, the summons named "Metcalf & Eddy" as a defendant. One of the main claims by the cross claim defendant, Maguire Group, Inc., is that it never contracted with Metcalf & Eddy but, rather, contracted with Metcalf & Eddy Services, Inc., a distinct and separate entity from Metcalf & Eddy. The cross claim defendant claims that Metcalf & Eddy refers to Metcalf & Eddy, Inc., of Wakefield, Massachusetts. The record, unfortunately, lacks any explicit evidence to support or refute the cross claim defendant's contention. We will refer to the defendant cross claimant as Metcalf & Eddy and we will refer to Metcalf & Eddy Services, Inc., as Services, Inc. A more thorough discussion of the different Metcalf & Eddy entities is presented in part II of this opinion.

[2] Neither the plaintiffs nor the named defendant, Dick Corporation, are parties to this appeal.

The following facts are necessary to the resolution of this appeal. On November 25, 1986, the town of North Haven (town) entered into a contract with Maguire for services related to the construction and renovation of its wastewater treatment plant. Maguire's function was to design the facility and to administer the contract. Dick Corporation was hired by the town as the general contractor and, as such, was responsible for the construction and modification of the plant. During the construction process, the town was to maintain operation and control of the plant.

At the beginning of construction, Tom Weston was the town employee in charge of the plant's operation. He held the requisite grade four license to operate the plant. In approximately March, 1990, after the construction on the plant had begun, Weston resigned. Maguire did not have any employees who had the state license required to operate the plant. As a courtesy to the town, Maguire contacted Metcalf & Eddy Services, Inc. (Services, Inc.).[3] Services, Inc., was in the business of operating wastewater treatment facilities. Services, Inc., employed Ronald Collins, who held the grade four license required to operate the plant. Services, Inc., and Maguire entered into negotiations regarding Collins' services. On March 29, 1990, Services, Inc., sent a proposal to Maguire indicating that Collins was available on a short-term basis, and that Services, Inc., would be willing to contract out his services to Maguire.[4] Maguire

---

[3] See footnote 1.

[4] The letter was sent on Services, Inc., letterhead, with a return address in Danvers, Massachusetts. The relevant portions follow: "Metcalf & Eddy Services, Inc. ('M&E') is pleased to submit this proposal to the Maguire Group ('Maguire') to provide the services of an interim plant manager at the North Haven Wastewater Treatment Facility (the 'Facility'). We have an individual with the appropriate equivalent Connecticut wastewater license available for the next three months. The interim plant manager will remain an employee of M&E for all purposes.
* * *

Compensation
Maguire shall compensate M&E for services performed under this agreement $2400.00 per week. Said compensation includes labor, overhead,

never signed and returned the letter confirming Services, Inc.'s conditions as had been requested. Collins, however, had begun working at the plant on March 5 or 6, 1990. He continued to work at the plant until August 1 or 2, 1990. Even though Maguire never signed or responded to the March 29 letter, it did pay Services, Inc., in accordance with the terms of that letter.

On July 19, 1990, the named plaintiff slipped and fell while at work, suffering serious injuries. The plaintiffs filed their summons and complaint on July 24, 1992, naming Dick Corporation, Maguire and "Metcalf & Eddy" as defendants. The cross claimant, Metcalf & Eddy, sent a letter to Maguire notifying it that, pursuant

---

direct costs and profit necessary to provide the services noted. Compensation for work performed beyond the scope of the services identified shall be negotiated between Maguire and M&E.

Payment

M&E will prepare invoices on a monthly basis and submit them on or about the first of the month. Payment is due within five (5) days of receipt of payment by Maguire from the Town of North Haven for said services, not to exceed sixty (60) days from the receipt of the invoice from M&E. Maguire will pay to M&E a one and one half percent (1.5%) per month interest charge for all invoices not paid within thirty (30) days following the time which payment is due.

\* \* \*

Indemnification

Maguire shall indemnify M&E, its stockholders, directors, officers and employees harmless from any loss, liability, claims or damages including reasonable attorney's fees, which arises from any:

1. Failure by Maguire or any third party to comply with the law or applicable rules and regulations.

2. Actions or performance of services by M&E under this agreement.

M&E shall indemnify and hold harmless Maguire, its stockholders, directors, officers and employees, from any loss, liability, claims or damages including reasonable attorney fees, which arise from gross negligence, willful misconduct or intentional omission of duties by M&E in the performance of its obligations under this agreement.

\* \* \*

If you have any questions feel free to call. If you concur with the conditions set forth, please sign below and return to my attention."

The proposal was signed by Eric Teittinen, vice president and division manager of Services, Inc.

to the indemnification agreement of March 29, 1990, Metcalf & Eddy would be expecting indemnification from any liability and reimbursement of reasonable attorney's fees. Metcalf & Eddy subsequently filed a cross claim against Maguire on August 24, 1993. After a jury trial, Metcalf & Eddy was found liable to the plaintiffs for $213,844. In the second phase of the trial, the jury found that Maguire was liable to Metcalf & Eddy for $298,000.

Maguire made postverdict motions to set aside the verdict, for a directed verdict and for remittitur of a portion of the award. The trial court denied Maguire's postverdict motions. This appeal followed.

I

Maguire first claims that the trial court improperly denied its motion to set aside the verdict and motion for a directed verdict because the jury could not reasonably have found that an indemnification contract existed between Maguire and Services, Inc. We disagree.

The standard for reviewing the denial of a motion to set aside the verdict and motion for directed verdict on evidentiary grounds is clear. "Our review of the trial court's refusal to [grant the motions] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *Mather* v. *Griffin Hospital*, 207 Conn. 125, 130, 540 A.2d 666 (1988)." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 277, 698 A.2d 838 (1997). "While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture

and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.) *Sheridan* v. *Desmond,* 45 Conn. App. 686, 691, 697 A.2d 1162 (1997).

Maguire claims that it never entered into a contract for indemnification with Services, Inc., or any other Metcalf & Eddy entity.[5] After a thorough review of the evidence, we conclude that the jury reasonably could have found that Maguire did enter into an indemnification contract.

While Metcalf & Eddy does not argue that Maguire and it entered into an express contract, Metcalf & Eddy does claim that an implied contract existed between them. "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words." *Collins* v. *Lewis,* 111 Conn. 299, 304, 149 A. 668 (1930). "It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Homecare, Inc.,* v. *Acquarulo,* 38 Conn. App. 772, 775, 663 A.2d 412 (1995).

The jury had before it testimony that Collins was sent to the plant prior to the March 29 letter and that, even without an express agreement in place, Maguire paid for Collins' services in accordance with the terms set

[5] For the purpose of this discussion, we defer our discussion of the roles of the various Metcalf & Eddy entities. That matter is discussed in part II of this opinion.

out in the March 29 letter. See footnote 4. Furthermore, the jury heard testimony that Alan Asikainen, Maguire's vice president, never sent any correspondence accepting *or rejecting* the conditions of the March 29 letter. "[S]ilence may constitute acceptance of an offer if the offeree, by his words or conduct, leads the offeror reasonably to interpret that silence as such. 1 Williston, Contracts (3d Ed. Jeager) § 91C; *Blakeslee* v. *Water Commissioners*, [121 Conn. 163, 183 A. 887 (1936)]. Whether such conduct took place so as to create a contract is a question of fact." *John J. Brennan Construction Corp., Inc.* v. *Shelton*, 187 Conn. 695, 710, 448 A.2d 180 (1982). The March 29 letter was admitted as a full exhibit, and the jury had the letter when it deliberated the second phase of the trial. The jury reasonably could have determined that, given the circumstances surrounding the March 29 letter, Maguire's failure to decline the conditions was an implied acceptance of its conditions. Additionally, the jury had as exhibits letters from Maguire to Services, Inc., and from Metcalf & Eddy to Maguire referencing Collins' services and the March 29 letter.

A letter from Maguire to Services, Inc., dated July 30, 1990, indicated that Maguire thanked Services, Inc., for providing Collins' services on short notice. The tenor of the July 30 letter, however, was to inform Services, Inc., that Collins' services would not be needed beyond August 3, 1990.

The letter from Metcalf & Eddy dated August 21, 1992, and signed "J. Alan MacKay, Counsel" states: "On March 29, 1990, our companies entered into an agreement pursuant to which we provided an interim plant manager for the North Haven wastewater treatment facility between March 5, 1990 and August 3, 1990. We have recently been served with a complaint filed by Albert Sandella against Dick Corporation, Maguire Group, Inc., and ourselves. Under the provisions of

the March 29, 1990 agreement, Maguire indemnified Metcalf & Eddy from any liability including reasonable attorney's fees, arising out of our performance of services under the agreement. Since we will be looking to you to reimburse us for any attorney's fees that may be incurred, I suggest you have your legal counsel contact me to discuss the conduct of the defense." There was no testimony before the jury that indicated that anyone from Maguire responded either affirmatively or negatively to the August 21 letter.

Perhaps the most telling exhibit before the jury was the copy of Metcalf & Eddy's cross claim dated August 12, 1993, and Maguire's answer dated October 19, 1993. In the cross complaint, Metcalf & Eddy alleged: "Pursuant to the March 29, 1990 Agreement between Metcalf & Eddy and Maguire, Maguire agreed to hold Metcalf & Eddy harmless and to indemnify it from any loss, liability, claims or damages which arises from . . . (2) actions or performance of services by Metcalf & Eddy under the agreement." Maguire answered by admitting the allegations.

Maguire claims on appeal that the answer was a mistake, and that the cross claim and answer, which were later superseded by amended pleadings and answers, should not be part of the file. Maguire presented no testimony explaining the change in its position with regard to the admissions. During his closing argument, Maguire's counsel alluded to its position that the original answer was a mistake. Attorneys' statements are not testimony and are not evidence. See *State v. Sauris*, 227 Conn. 389, 404, 631 A.2d 238 (1993). The jury is free to draw its own conclusions from the evidence presented and need not believe the arguments for one side or the other. The October 19, 1993 answer is an evidentiary admission. "[S]tatements in complaints against parties subsequently withdrawn from a cause

of action are admissible as evidence . . . . This statement is but a corollary of the rule [our Supreme Court has] consistently followed under which statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions by the party making them, just as would any extrajudicial statements of the same import." (Citation omitted; internal quotation marks omitted.) *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 492 A.2d 164 (1985).

We conclude that the jury had sufficient evidence from which it reasonably could infer that Maguire entered into an implied contract in which it agreed to indemnify Services, Inc. The trial court correctly denied Maguire's motions to set aside the verdict and for directed verdict.

## II

Maguire next claims that, even if it did enter into an indemnification contract, that contract was with Services, Inc., and not with the cross claimant, Metcalf & Eddy. Maguire claims that, because Metcalf & Eddy was not a party to the indemnification contract, it is not entitled to indemnification under the contract, and, accordingly, the trial court should have found, as a matter of law, that Metcalf & Eddy was not entitled to indemnification. We disagree.

"[T]o form a contract . . . the identities of the contracting parties must be reasonably certain." (Citations omitted.) *Ubysz* v. *DiPietro*, 185 Conn. 47, 51, 440 A.2d 830 (1981). Determining the identities of the parties to this contract is a question of fact to be determined by the trier. We will not disturb such a finding unless it is unsupported by the facts and clearly erroneous.

The jury had before it the letters of the parties and the cross claim and answer. Additionally, the jury had

before it, as a full exhibit, the summons that lists "Metcalf & Eddy, 30 Harvard Hill Square, Wakefield, MA 01880" as a defendant.

The March 29 letter from Services, Inc., bears the company logo. The August 21 letter from Metcalf & Eddy also has a company logo. The two logos are very similar. The jury had these letters before it when it deliberated the second phase of this trial. Additionally, the March 29 letter was signed by Eric Teittinen and the August 21 letter indicated that a copy was sent to Eric Teittinen. The jury reasonably could have observed the similarities between the two letterheads and found that the two companies were essentially the same, or closely related.

We note again that the August 21 letter to Maguire from Metcalf & Eddy went unanswered. The jury reasonably could have found that, under the circumstances, Maguire's failure to respond to the letter could have been taken as an implicit agreement to indemnify Metcalf & Eddy. Moreover, as the trial court pointed out in its memorandum of decision denying Maguire's motions to set aside and for a directed verdict: "The Maguire Group offered no official corporate documents to establish that the entities were in fact totally separate corporations."

Metcalf & Eddy presented only one witness to establish its identity as the party to the indemnification contract, Hugh Manke, the managing partner of the New Haven office of Updike, Kelly & Spellacy, P.C., the law firm that represented Metcalf & Eddy in this litigation. On direct examination, Manke testified that he was not sure of the address to which the legal bills were sent. When asked the name of his client, Manke responded: "It's Metcalf & Eddy." On cross-examination, the following exchange took place between Manke and Maguire's counsel:

"[Maguire's Counsel]: Do you know who the Metcalf & Eddy client of Updike, Kelly & Spellacy is? Do you know what the corporate name is?

"[The Witness:] No, I don't."

Metcalf & Eddy, however, introduced billing records that indicated that the client of Updike, Kelly & Spellacy, P.C., in this matter was "Metcalf & Eddy Services."

Maguire's sole witness, its vice president Asikainen, testified that Collins' services were billed by "Metcalf & Eddy Services, Inc., of Danvers, Massachusetts," and that Maguire never had any dealings with Metcalf & Eddy of Wakefield, Massachusetts. While Metcalf & Eddy's counsel attempted to elicit testimony that Maguire had done business with Metcalf & Eddy, he was unable to elicit that fact.

The jury had also heard Collins' testimony in the first phase of the trial that he was an employee of Services, Inc. Metcalf & Eddy did not present evidence to contradict that testimony. Collins, however, was not totally consistent in his testimony as he referred to both "Metcalf & Eddy" and "Metcalf & Eddy Services, Inc." On its cross-examination of Richard Gillen, North Haven's director of public works in 1990, Metcalf & Eddy elicited testimony that Gillen believed Collins worked for "Metcalf & Eddy."[6]

---

[6] The following exchange took place between Metcalf & Eddy's counsel and Gillen.

"Q. Now you indicated to us that you did have some familiarity with who Mr. Collins was . . . .

"A. Yes.

"Q. And your recollection is that he was retained by the Maguire Group, is that right?

"A. Yes.

"Q. Okay. So he worked for the Maguire Group during the summer of 1990, is that right?

"A. Yes.

"Q. He wasn't a Maguire employee though, was he?

"A. Not to my knowledge, no.

Given the evidence that the jury heard through testimony and the documentary evidence that it had before it during deliberations, especially the evidentiary admission of Maguire in the initial answer, there clearly is evidence supporting the jury's determination that Maguire is liable to indemnify the cross claimant, Metcalf & Eddy. It is entirely reasonable, given the conflicting evidence, that the jury could have found that Metcalf & Eddy was merely a shortened version of Metcalf & Eddy, Services, Inc., Without a showing of a clearly erroneous finding of fact, we will not reverse the jury's findings. We conclude that the trial court properly denied the motion to set aside and motion for a directed verdict.

## III

Maguire next claims that the trial court improperly failed to determine, as a matter of law, that the indemnity agreement was void as to public policy pursuant to § 52-572k.[7] We are not persuaded.[8]

---

"Q. Do you remember him working for Metcalf & Eddy, do you remember that group?

"A. That's what I was told, yes."

[7] General Statutes § 52-572k provides in relevant part: "(a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of such promisee, his agents or employees, is against public policy and void . . . ."

[8] In its brief, Metcalf & Eddy argues, without any analysis, that the general verdict rule applies to this case. Metcalf & Eddy's position appears to be that the general verdict rule bars us from addressing the issue of whether the agreement is void under § 52-572k. "[T]he so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action . . . or distinct defenses." (Citations omitted; internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993).

In its memorandum of decision denying Maguire's postverdict motions, the trial court held: "The applicability of [§ 52-572k] depended on whether the jury considered the services covered by the management contract to be 'entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto.' . . . The jury could, within the evidence, have concluded that the contract was not of the sort described in § 52-572k."

In general, whether conduct falls within a statute's province is a matter of statutory construction, and presents a question of law warranting plenary review. *Lopiano* v. *Lopiano*, 247 Conn. 356, 363, 752 A.2d 1000 (1998). "A primary rule of statutory construction is that when the words of a statute are plain and unambiguous they should be given full effect. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." *State* v. *Jones*, 51 Conn. App. 126, 137, 721 A.2d 903 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

Although Maguire does not challenge the trial court's instructions to the jury, we review them to determine

---

We do not believe that the general verdict rule applies in this case. "The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992). Metcalf & Eddy's theory of recovery is contractual indemnification. Maguire denies the existence of a contract and defended on the basis of the indemnification clause's unenforceability under § 52-572k. In rendering its verdict for Metcalf & Eddy, the jury necessarily found that a contract existed and that the contract was enforceable. The general verdict rule bars review of a claim of error when there is an untainted route that the jury might have taken. Here, where Metcalf & Eddy pleaded only one theory of recovery, and the jury returned a verdict for Metcalf & Eddy, it is hard to conceive of any alternate route that the jury could have taken to reach its verdict. For that reason, we conclude Metcalf & Eddy incorrectly invokes the general verdict rule.

if the trial court acted improperly in not concluding, as a matter of law, that the indemnification contract fell within the scope of those prohibited by § 52-572k. The trial court instructed the jury as follows: "It is for you to determine whether the indemnification agreement was of the kind described in this statute, that is, whether the agreement was 'entered into in connection with or collateral to a contract or agreement relative to the construction . . . .'

"A party that has contracted to perform construction may enter into other contracts at the same time and those other contracts may or may not be in connection with or collateral to the construction contract. So the statute does not mean that all contracts entered into by a contractor may not be enforced if they have indemnification clauses. It extends only to such contracts if they are entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building or structure. So it is the subject matter of the contract that decides whether or not an indemnification agreement can be enforced. . . .

"If you find that the agreement claimed by Metcalf & Eddy was not of the kind that is invalidated by this statute, then the agreement would be enforceable providing that the other requirements I've told you about are met."

The trial court properly instructed the jury on how it was to apply § 52-572k to the facts. It is the trial judge's duty to inform the jury as to the law that applies to the case and what to do if the facts fit within a statute's applicability. It is the jury's province to decide whether the facts presented fit within the law as the trial judge has instructed them. The jury was instructed that it was to determine whether the contract was related to the construction of the wastewater treatment

plant. If it was, then the jury was not to find for Metcalf & Eddy. If, however, the contract was not related to the construction of the plant, the jury was free to determine whether Metcalf & Eddy had met its burden of proof. The trial court acted properly.

We next decide the issue of whether, given the evidence, the jury reasonably could have found that the agreement between Metcalf & Eddy and Maguire was not related to construction. In a motion to set aside the verdict, we review the facts in the light most favorable to the prevailing party, and those facts will not be disturbed unless the jury could not have reasonably and legally reached its verdict. *Mather* v. *Griffin Hospital*, supra, 207 Conn. 130.

We look first at the March 29 letter, which provides:

"1. M&E will provide an interim plant manager with duties identified below for approximately three months . . . .

\* \* \*

"3. Interim plant manager will provide general supervision to the existing staff including the oversight of operation and maintenance practices, sampling techniques and laboratory procedures, records, and reporting and work schedule compliance.

"4. The managerial responsibilities of the interim plant manager do not extend to treatment process control of . . . permit violations which may occur during the period in which services are being provided under this agreement.

"5. Interim plant manager will not be responsible for taking disciplinary action of any nature against any employees of the town of North Haven. In the event such action appears necessary to effectively operate

the facility, all proposed disciplinary matters will be referred to the appropriate representative of the town of North Haven.

"6. Interim plant manager will be available as needed to provide the necessary communications to Maguire." Nothing in the text of the letter indicates that Metcalf & Eddy provided Collins' services as part of a construction contract or corollary to construction contract."

We next review the testimony before the jury. Collins testified that he was primarily a contact between the town and Dick Corporation.[9] His testimony reflects that Dick Corporation was responsible for the construction and renovation of the plant. Gillen testified that Collins had even less authority than Weston, whom he temporarily replaced in March, 1990.

---

[9] The following exchange took place between Metcalf & Eddy's counsel and Collins:

"Q. And did you have any role in designing this work that was constructed while you were there?

"A. No.

"Q. And did you have any role in administering the contract with Dick Corporation?

"A. No.

\* \* \*

"Q. Were there occasions when you had to interact with the construction that was going on?

"A. Yes.

"Q. All right. Tell us when that would occur or why would it occur?

"A. Well, if they needed certain equipment out of service we'd have to figure—the operating staff would have to figure out how to do it and what effect that would be on our permit and what special precautions we had to take to maybe do a better job of operating the plant during that period to meet the requirements.

"Q. It is fair to say then you were involved in the coordinating between the town on the one hand—

"A. Yes.

"Q.—the contractor—the contracting that was going on?

"A. Right.

"Q. Did you have any other role with the construction other than being a point of contact for the town?

"A. No."

Maguire's only witness, Asikainen, when asked why the town asked Maguire to obtain an interim manger, responded: "I don't recall all the details, you know, in terms of why they asked us to do it. But there was some reason that they couldn't do it or had some problems with getting someone on board very quickly. However, if it was done through Maguire Group, that we could get someone on board a lot faster which was needed to coordinate the construction at the treatment plant which was ongoing while [Weston] left midstream." Asikainen further testified that "Ron Collins had to be actively involved in the construction process in that we had a construction process whereby we had to keep existing facilities at the treatment plant on line. . . . There were also biweekly meetings . . . where [Collins] attended so that Dick Corporation who was the contractor would sit with our representatives and Ron Collins and go over issues that were coming up and what needed to be done by the town to facilitate the construction. . . . So there was a coordination all the way through the construction while Ron Collins was working as an acting superintendent."

The evidence presented to the jury was conflicting as to whether the March 29 letter was connected to a construction contract. The jury's function is to weigh the evidence and to determine how much credibility to give to each witness. *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 799, 720 A.2d 242 (1998). On the basis of the evidence presented, we conclude that the jury reasonably could have found that Metcalf & Eddy was not involved in a construction contract.

Maguire's brief also asserts, albeit without analysis, that the contract between Metcalf & Eddy and Maguire was also a "maintenance" contract and, therefore, covered by § 52-572k. This claim lacks merit.

The trial court, in its memorandum of decision stated: "[T]he jury was warranted in finding that the contract

was one for managerial services, not a contract described in § 52-572k." The jury had before it testimony that Collins' role was to ensure that the wastewater plant continued to operate during the construction and renovation. The fact that Maguire and Dick Corporation personnel would inform Collins what valves needed to be closed at certain times during the construction does not, in and of itself, mean that the March 29 agreement was for "maintenance." Furthermore, the fact that Collins attended meetings regarding the construction of the plant also does not show that he was participating in any capacity other than managerial. The jury reasonably could have found Collins' function to be managerial and not maintenance related. Accordingly, we conclude that the trial court properly determined, as a matter of law, that Metcalf & Eddy's claim was not barred by § 52-572k.

The judgment is affirmed.

In this opinion the other judges concurred.