[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff CP Designs, Inc. filed the present action against the defendants Peter Leers GmbH and Peter Leers individually (Leers) alleging breach of contract and unjust enrichment. The plaintiff is a Connecticut corporation engaged in providing engineering, procurement and construction management services. Peter Leers GmbH is a German Corporation doing business in Connecticut. The plaintiff contends that the defendants have failed to pay it for engineering and site selection services it rendered pursuant to an agreement between the parties. The defendants argue that they do not owe the plaintiff for its services. Instead, the defendants claim that the parties agreed that the plaintiff would provide services in exchange for a three to four percent finder's fee upon the actual purchase of certain real estate.
This court conducted a bench trial on January 11, 2000. Based upon CT Page 4779 the testimony of James Coyle, Peter Leers and Hugo Krantz, and the exhibits presented, this court finds the following facts and deems them relevant to the disposition of this matter.
In 1996, the defendants entered into a joint venture with Dr. Karl Maier and Hugo Krantz to create Newsprint Development, LLC (Newsprint).[1] According to a business plan written by Krantz, Newsprint would build five paper mills across the United States to produce recycled newsprint from old magazines and newspapers using "proven and environmentally acceptable European technology." (Plaintiff's Exhibit 13.) In December 1996, Leers approached James P. Coyle, the president of the plaintiff, concerning this newspaper recycling venture. Leers introduced Coyle to Maier and Krantz. Coyle discussed with Leers and Krantz his skills and what his firm could do for the newsprint venture. In early 1997, Coyle showed Leers real property located in New Milford. Leers, Krantz and Maier engaged the plaintiff to conduct various activities for the joint venture, including engineering, site selection and evaluation services. All parties considered the New Milford site as a potential location for one of Newsprint's recycling plants. On or about March 31, 1997, the plaintiff submitted a proposal for engineering services to someone he claims was an agent of Peter Leers GmbH without certainty as to the person's identity. The matter of payment to the plaintiff was never resolved between the parties. On July 31, 1997, the plaintiff began providing bills to the defendants charging the defendants for services at an hourly rate. The plaintiff claims that the defendants owe it $184,631.34 for services rendered between March 1997 and October 1997.
The plaintiff must prove a breach of contract by a preponderance of the evidence. See Foley v. Huntington Co., 42 Conn. App. 712, 732
n. 7, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). Based upon the testimony of James Coyle, Peter Leers and Hugo Krantz, this court finds that there was no express contract between the plaintiff and the defendants. The plaintiff contends that the defendants agreed to pay a reasonable value for the services that CP Designs provided. However, the testimony of Peter Leers and Hugo Krantz indicates otherwise. While the defendants engaged Coyle concerning the recycled newsprint venture, this court is not satisfied that the plaintiff has proven any express agreement between the plaintiff and the defendants.
The plaintiff claims that he provided a proposal for engineering services to Peter Leers GmbH on or about March 31, 1997, but he does not specify with certainty which individual he gave the proposal or CT Page 4780 whether the defendants agreed to its terms. (See Transcript, p. 11.)[2] Leers testified that he never received the plaintiff's proposal. Regardless of whether any agent of the defendants received the proposal, the proposal does not indicate that the defendants would be responsible for the expenses of the project. It merely states the costs of the project. Therefore, it is not useful to the determination of whether a contract arose between the parties.
While the plaintiff claims that the defendants agreed to pay the plaintiff at an hourly rate pursuant to the engineering proposal, the defendants claim that the plaintiff agreed to payment on a contingent fee basis. All parties acknowledge that the issue of a real estate fee was raised during this transaction. Apparently, Coyle objected to payment through a real estate fee because he was not a licensed real estate broker. Coyle testified that the issue of a finder's fee was never raised to him. On the other hand, Krantz testified that he made it clear to Coyle that he would be paid on a contingent basis. Based upon this evidence, the court is satisfied that no express contract arose for payment based upon a contingent fee or an hourly rate between the parties.
This court also holds that an implied contract did not arise between the plaintiff and the defendants on a fee for services basis. "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. . . . It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like any other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous." Sandella v. Dick Corp., 53 Conn. App. 213, 219, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999).
The plaintiff has failed to prove by a preponderance of the evidence that the defendants agreed to pay an hourly rate for services provided by the plaintiff or that the defendants' conduct demonstrated that they were required to pay the plaintiff at an hourly rate. While it appears from the record that Coyle preferred payment for services rendered at an hourly rate, the court finds that Leers and Krantz believed that Coyle and the plaintiff would receive payment on a contingent basis. On a few occasions, Coyle raised the issue of expenses to Leers and/or Krantz. Krantz made it clear that payment for the plaintiff's efforts was contingent upon the success CT Page 4781 of the overall project, i.e. purchase of the New Milford property. While Krantz did not discourage the plaintiffs enthusiasm for the project, he warned Coyle that he was taking a big risk by concentrating so many of his resources on the project. Krantz testified that he told Coyle that the monetary involvement of the defendants was far from certain. Krantz also testified that he told Coyle that when he ran low on funds for the project, he received payment for expenses from Leers. He suggested that Coyle attempt to seek the payment of expenses from the defendants in order to continue the project. The court finds that the plaintiff's relationship with the defendants was somewhat similar to Krantz's relationship to the defendants. The defendants never assumed any obligation to pay the plaintiff for its work on the Newsprint project.
The court also finds that the defendants' position concerning a continent fee for services is credible based upon all of the circumstances of this case. While incurring expenses of nearly $185,000 for a potential contingent fee of $300,000 seems unlikely, underlying this entire transaction was the possibility that the defendants would use the plaintiff's engineering services for the Newsprint venture in the four other potential sites. Additionally, the plaintiff's first bills are dated July 31, 1997, four months after the date indicated on the proposal for engineering services. The bills charge the defendants for four months work costing over $100,000. While Coyle testified that most of the work on the project occurred between June and August, the plaintiff charged the defendants $38,534.75 for work occurring more than two months prior to the date of the initial bill. Leers testified that he called the plaintiff and complained about the bills sent to him and stated that that was not the arrangement between the parties. The court believes that if the issue of payment to the plaintiff was uncertain between the parties, the plaintiff should have taken reasonable efforts to clarify his position that the defendants were subject to his hourly rate, preferably with a signed writing between the parties.
In addition, this court finds that the defendants were not unjustly enriched by the plaintiff's activities. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, CT Page 4782 conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) Meaney v. Connecticut Hospital Association, Inc., 250 Conn. 500,511-12, 735 A.2d 813 (1999). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 283, 649 A.2d 518 (1994).
While the defendants benefitted from much of the plaintiff's work on the project, the court finds that the defendants did not act unjustly by refusing to pay the plaintiffs. As the court has stated previously, the defendants had a reasonable belief that the plaintiff would receive compensation on a contingent fee basis. Both parties acknowledge that the issue of a contingent fee arose. Krantz testified that he discussed the issue several times with Coyle. There is also evidence that the plaintiff impliedly agreed to work for a contingent fee. The plaintiff did not bill the defendants until late July or early August for its services. By waiting four months to charge the defendants over $100,000, the plaintiff allowed the defendants understanding of the relationship to continue unchallenged and permitted bills to accumulate without a clear understanding that the plaintiff wanted to be paid at an hourly rate. Finally, despite the defendants' failure to pay the bills, the plaintiff continued to work on the project through October 1997. Without the existence of a written agreement and in light of the apparent confusion between the parties, the plaintiff acted unreasonably under the circumstances. Therefore, the plaintiff is not entitled to recover from the "defendants on a theory of unjust enrichment.
HICKEY, J.