[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT MILLER'S MOTION FOR SUMMARY JUDGMENT (MOTION NO. 158)
Before the court is the defendant Burr V. Mill, III's Motion for Summary Judgment. The following facts are undisputed. On May 5, 1997, the pro se plaintiff Fatima Silva filed a complaint against her former employer, defendant New York Life Insurance Company (New York Life), a corporation with an office in Fairfield, her New York Life office manager, defendant Burr V. Miller III, and an independent contractor agent for New York Life, defendant Joseph Morales. The plaintiff was employed pursuant to a contract as an agent for New York Life for just over two months, from February 2, 1994 until April 11, 1994, when defendant New York Life terminated the plaintiff's employment. The plaintiff was notified of her termination by a letter dated April 11, 1994, signed by the managing partner of the Connecticut office of New York Life, John Munn Ellis. (See defendant's Exhibit 3, April 11, 1994 letter to Silva from Ellis.) On April 15, 1994, the plaintiff had a face-to-face conversation with defendant Miller verifying her termination, which conversation was recorded by the plaintiff and reduced to a transcription of the same. (See plaintiff's Exhibits D and 5, Audio Tape of April 15, 1994.) CT Page 878
The plaintiff's employment was governed by two contracts, the Training Allowance Subsidy Plan Agreement (TAS) and the Agent's Contract, each signed by the plaintiff on February 24, 1994, effective February 2, 1994, the date the plaintiff was hired. (See defendant's Exhibit 1, TAS Agreement; defendant's Exhibit 2, Agent's Contract.) After the plaintiff's termination, the company assigned two of its agents, defendant Morales and Patricia Tetrault, to service the plaintiff's former clients.
The plaintiff alleges that at the time of her termination, she had seven pending individual life insurance applications to which she was, and still is, entitled to commissions. She avers in her complaint that defendant Miller represented to her in their April 15, 1994 conversation that the commissions on these policies would be frozen and left with the company in an interest bearing escrow account for the plaintiff. (See Complaint, p. 2.) No such transfer occurred and to date the plaintiff has not been paid any commissions from these seven applications.
Also, the plaintiff contends that she was defamed by letters on defendant Miller's letterhead that were sent to four of the plaintiff's seven former clients, which letters indicated that certain aspects of their life insurance applications had not been properly processed by the plaintiff. (See plaintiff's Exhibit J, letters to Armando Gonclaves and Maria Gonclaves dated May 10, 1994 and letters to Jose Pereira and Maria Pereira dated May 12, 1994.) The plaintiff claims that although these applications were properly processed the defendants Miller and Morales conspired to deprive the plaintiff of the commissions allegedly owed to her by having defendant Morales rewrite the seven individual life insurance applications instead of having Morales merely service the subject applications.
On July 28, 2000, defendant Miller filed a motion for summary judgment and supporting memorandum challenging the legal sufficiency of the plaintiff's complaint. In support of his motion, the defendant filed opposing affidavits and other documentary evidence, including portions of certified deposition transcripts. The plaintiff filed a timely opposition on September 8, 2000, with numerous exhibits, including portions of certified deposition transcripts.
Connecticut courts have allowed the use of a motion for summary judgment to test the legal sufficiency of a plaintiff's complaint after the pleadings have been closed,[1] even though a motion to strike is the more appropriate vehicle for challenging the legal sufficiency of a claim. See Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540
(1971); Drahan v. Board of Education, 42 Conn. App. 480, 498 n. 17, CT Page 879680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996). "Under such circumstances, the motion for summary judgment is treated as if it were properly presented as a motion to strike." (Internal quotation marks omitted.) Mode v. Town of Plainville, Superior Court, judicial district of New Britain at New Britain, Docket No. 493091 (April 19 2000, Kocay,J.). "However, the motion should be only be granted if it meets the standard for a motion for summary judgment, not for a motion to strike." (Internal quotation marks omitted.) Kalwat v. Arnow, Superior Court, judicial district of Stamford at Stamford, Docket No. 132773 February 6, 1996, Lewis, J.) (16 Conn.L.Rptr. 111).
Although not alleged in separate counts, the plaintiff's complaint apparently makes claims against defendant Miller for the following causes of action: 1) negligent infliction of emotional distress; 2) intentional infliction of emotional distress; 3) breach of express and/or implied contract; 4) breach of fiduciary duty; 5) civil conspiracy; and 6) defamation. The court will discuss each claim separately.
A. Negligent Infliction of Emotional Distress
Defendant Miller moves for summary judgment on this cause of action on the ground that an employee may not maintain a claim for negligent infliction of emotional distress based on conduct that occurred other than during the event of her termination. In opposition, the plaintiff argues that she need only prove that the defendants should have realized that their conduct involved an unreasonable risk of causing the plaintiff to suffer emotional distress and that such distress might result in illness or bodily harm.
The plaintiff is correct in stating that in order to prevail on a claim of negligent infliction of emotional distress, "the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Ancona v. Manafort Brothers, Inc., 56 Conn. App. 701,713, 746 A.2d 184, cert. denied, 252 Conn. 954, ___ A.2d ___ (2000); see also Montinieri v. Southern New England Telephone Co., 175 Conn. 337,345, 398 A.2d 1180 (1978).
As the defendant notes, our Supreme and Appellate Courts have held that an employee could only recover for negligent infliction or emotional distress in the employment context when her claim is "based upon unreasonable conduct of the defendant in the termination process." (Emphasis added.) Parsons v. United Technologies Corp., 243, Conn. 66, 88, 700 A.2d 655 (1997); Pavliscak v. Bridgeport Hospital,48 Conn. App. 580, 597, 711 A.2d 747 cert. denied, 245 Conn. 911, CT Page 880 718 A.2d 17 (1998). However, several Superior Court decisions permit a cause of action for negligent infliction of emotional distress by an employee against an employer, thereby distinguishing Parsons andPavliscak on the ground that those cases involved wrongful termination claims and a cause of action for negligent infliction of emotional distress absent an allegation of wrongful termination was not discussed. See, e.g., Murphy v. Girouard Associates, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 171693 (February 22, 2000, Karazin, J.) (26 Conn.L.Rptr. 589, 590); Karanda v. Pratt Whitney Aircraft, Superior Court, judicial district of Hartford at Hartford, Docket No. 582025 (May 10, 1999, Hale, J.) (24 Conn.L.Rptr. 521, 524).
The plaintiff: alleges that on April 15, 1994, defendant Miller told her the commissions for the policies would be frozen and left with the company in an interest bearing account for the plaintiff; (see complaint, p. 2); but that defendant Miller instead directed that these commissions be paid to defendant Morales. (See Complaint, p. 6.) The court notes that the audiotape transcript of this conversation provided by the plaintiff; (see plaintiff's Exhibits D and 5, Audiotape transcript of April 15, 1994 conversation, p. 8); shows defendant Miller's statement to be different than that related by the plaintiff. In response to the plaintiff asking about her paycheck for that week, defendant Miller stated that "[y]our ledger account as of the termination is frozen. I have to review that, and we'll let you know, because whenever a TAS Agreement is terminated from the company, the ledger is frozen." (Plaintiff's Exhibits D and 5, p. 8.) James Robertson, a compliance officer for New York Life, testified as to the policy of New York Life, stating that "after termination, a hold is put on the terminated agent's ledger for one year before any payments are actually made to the determinated agent. So the money would be credited to the agent's account but would not actually be dispersed to them until one year after they were terminated." (Plaintiff's Exhibit E, Deposition of James A. Robertson, III, January 7, 1997, p. 115-116.). This policy is outlined in the TAS Agreement. (See defendant's Exhibit 1, p. 2-3.)
At the time of the April 15, 1994 conversation between the plaintiff and defendant Miller, the plaintiff had already received her termination letter. (See plaintiff's Exhibits D and 5, p. 2.) The termination letter was effective the date it was written, April 11, 1994. (See defendant's Exhibit 3, Letter from Ellis to Silva dated April 11, 1994; Complaint, p. 2.) While the plaintiff does not allege any facts to suggest this conversation was an extension of her termination, this conversation only occurred because of her termination and concerned what would happen to her commissions. Even if the court considers this conversation an extension of her termination or even part of the termination process, CT Page 881 "(t]here must be evidence that the manner of the plaintiff's termination from employment was different . . . from the usual termination of employment or that it was done in [a] way that would cause . . . more than the normal upset that would, result from any termination of employment." (Internal quotation marks omitted.) Thompson v. BridgeportHospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 352686 (November 17, 1999, Nadeau, J.)
It is undisputed that defendant Miller had no part in deciding to terminate the plaintiff or of notifying the plaintiff of her termination. The plaintiff fails to allege that the manner of her termination was anything different from New York Life's usual termination of employment or that it was done in manner that would cause any more than the normal upset that would result from any termination of employment. Accordingly, the defendant's motion for summary judgment on the negligent infliction or emotional distress claim should be granted and to strike such claim because plaintiff may not bring a negligent infliction of emotional distress claim on an employment context for unreasonable conduct of the defendant in the termination process.
Assuming arguendo that the conduct occurred outside the event of her termination because the plaintiff was no longer an employee of New York Life at the time of her conversation with defendant Miller, see Anastasiov. Knights of Columbus, Superior Court, judicial district of New Haven at New Haven, Docket No. 039680 (May 21, 1995, Silbert, J.) (conversation between employee and his manager not considered part of the termination process where the conversation took place later in the day after the plaintiff was already terminated and there was no indication in the complaint that the termination was a continuing process lasting beyond the initial termination earlier in the day); the plaintiff fails to allege the requisite elements for negligent infliction of emotional distress. Specifically the plaintiff fails to allege illness or bodily harm stemming from defendant Miller's actions. The plaintiff merely alleges that defendant Miller directed commissions be paid to defendant Morales, thereby breaching both his written and implied contract with the plaintiff; (see Complaint, p. 6); and that by reason of the acts of the defendants, the plaintiff sustained and still suffers embarrassment and emotional distress. (See Complaint, p. 8.) "Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike." Mazza v. ConnecticutLight and Power, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 130546 (March 9, 2000, Hodgson, J.); see alsoFortini v. New England Log Homes, Inc., 4 Conn. App. 132, 134-35,492 A.2d 545, cert. dismissed, 197 Conn. 801, 495 A.2d 280 (1985).
The plaintiff alleges that she suffered emotional distress because she CT Page 882 did not receive commissions she claims were owed her; (see Complaint, p. 6); and which she claims should be paid to her under the TAS and Agent Agreement provisions. (See Complaint, p. 8.) Breach of an agreement or a company policy by the defendant, without more, would not be a sufficient basis on which to claim emotional distress. See Dowling v. First FederalBank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533172 (June 30, 1995, Corradino, J.) (claim for negligent infliction of emotional distress based on factual allegations made in support of a breach of contract claim struck as the mere breach of contract does not warrant recovery of mental distress damages). Furthermore, although the plaintiff argues that the motivation behind the decision to have the seven individual life insurance policies rewritten was unreasonable, she fails to allege sufficient facts that would indicate that the manner in which the defendant Miller did so involved an unreasonable risk of causing emotional distress. Accordingly, the defendant's motion for summary judgment on the negligent infliction of emotional distress claim is granted.
B. Intentional Inflection of Emotional Distress
Defendant Miller moves for summary judgment on this cause of action on the around that the plaintiff fails to allege he engaged in extreme and outrageous conduct that he knew or should have known would cause emotional distress and that the plaintiff suffered severe emotional distress as a direct result thereof. In opposition, the plaintiff argues that a careful reading of her deposition demonstrates enough factual support for the proposition that the conduct of the defendants was extreme and outrageous, as the term has been defined by the Connecticut courts. Further, the plaintiff argues that whether the conduct alleged was extreme and outrageous within the meaning of established law is a question for the jury.
For the plaintiff to maintain an action for intentional infliction of emotional distress "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 101,700 A.2d 655 (1997). "[E]xtreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. . . .Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." (Internal quotation marks omitted.) Birov. Hirsch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 314442 (February 5, 1998, Skolnick, J.). CT Page 883
"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.)Bell v. Board of Education, 55 Conn. Act. 400, 409 739 A.2d 321 (1999). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy [the extreme and outrageous] elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." (Internal quotation marks omitted.) Bell v. Board of Education, supra, 409-10.
The plaintiff argues that defendant Miller was aware of defendant Morales telling the plaintiff's former clients that the life insurance applications the plaintiff had written were deficient and needed to be rewritten and that such conduct constitutes extreme and outrageous behavior. In addition, the plaintiff alleges that defendant Miller's failure to place the commissions for the seven pending life insurance applications into an interest bearing account after the plaintiff's termination, as she claims he indicated to her he would do, constitutes extreme and outrageous behavior.
The court finds that the facts alleged in the complaint, even when construed in a light most favorable to the plaintiff, do not describe conduct that exceeds all bounds usually tolerated by decent society. Accordingly, the defendant's motion for summary judgment on the intentional infliction of emotional distress claim is granted as the plaintiff fails to state a legally sufficient cause of action for intentional infliction of emotional distress.
C. Breach of Express and/or Implied Contract
Defendant Miller moves for summary judgment on the breacf of contract claim on the ground that the plaintiff fails to allege any express or implied contract between the plaintiff and defendant Miller. In opposition, the plaintiff argues that defendant Miller breached an implied contract he had with the plaintiff when he told her that her commissions would be placed in an interest bearing account until the end of the year and then failed to do so. Further, the plaintiff argues that the defendant Miller breached an implied contract with the plaintiff when he allowed her former policies to be rewritten, rather than serviced. Both parties fail to cite any supporting law for their positions.
1. Express Contract
The plaintiff had two written contracts, the TAS Agreement; (see CT Page 884 plaintiff's Exhibit 3); and her Agent's Agreement. (See plaintiff's Exhibit 2.) Both of these written agreements were entered into between the plaintiff and defendant New York Life, not defendant Miller. There is no evidence or allegation that defendant Miller and the plaintiff entered into an express written or oral contract. Therefore, the court finds that there was no express contract between defendant Miller and the plaintiff.
2. Implied Contract
The plaintiff alleges that an implied contract between herself and defendant Miller was formed during their conversation on April 15, 1994. The plaintiff alleges the contract was formed when defendant Miller told her that the commissions for the policies would be frozen and left with the company in an interest bearing account for the plaintiff. (See Complaint, p. 20). The plaintiff further alleges that defendant Miller violated this contract by not placing the plaintiff's commissions in an interest bearing account and by directing that these commissions be paid to defendant Morales. (See Complaint, p. 6.) Defendant Miller argues that he did not have an implied contract with the plaintiff and that he never intended to create a contractual commitment with the plaintiff during their April 15, 1994 conversation.
"[T]o form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties. . . .The manifestation of assent may be made wholly or partly by written or spoken word or by other acts or by failure to act." (Citations omitted; internal quotation marks omitted.) Thames River Recycling, Inc.v. Gallo, 50 Conn. App. 767, 798, 720 A.2d 242 (1998). "A contract implied in fact depends on an actual agreement that there be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct." Homecare, Inc. v. Acquarulo,38 Conn. App. 772, 775, 663 A.2d 412 (1995). "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words." (Internal quotation marks omitted.) Sandella v. Dick Corp., 53 Conn. App. 213,219, 729 A.2d 813 (1999). "Specifically, [t]he intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) Sloan v. Kubitsky, 48 Conn. App. 835, 839, 712 A.2d 966
(1998), cert. dismissed, 248 Conn. 670, 728 A.2d 1095 (1999). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." (Internal quotation marks omitted.) Reynolds v. Chrysler First CommercialCorp., 40 Conn. App. 725, 730, 673 A.2d 573, cert. denied, 237 Conn. 913,675 A.2d 885 (1996). CT Page 885
It is undisputed that defendant Miller did speak to the plaintiff on April 15, 1994, wherein he verified her termination and made statements about freezing her ledger account. (See plaintiff's Exhibits D and 5, p. 8.) The parties are in conflict as to what was said. Whether this conversation created an actual agreement between the parties depends upon which version of the conversation the trier finds more worthy of belief. A material issue of fact, therefore, exists for resolution by the jury. Accordingly, the defendant's motion for summary judgment on the breach of implied contract claim is denied.
D. Breach of Fiduciary Duty
The plaintiff alleges that defendant Miller had a fiduciary relationship with her by virtue of his managerial position and the duties he had with respect to processing agents' commissions. Specifically, the plaintiff alleges defendant Miller had a fiduciary duty to her to make sure that the commissions from the seven individuals applications were placed into escrow for a year after her termination, as she claims he assured her they would be. Defendant Miller moves for summary judgment on this claim on the ground that he held no position as fiduciary for the plaintiff and further, the plaintiff failed to allege facts that would give him fiduciary status. Both parties fail to cite to any supporting law for their respective positions.
"[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . .The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.)Murphy v. Wakelee, 247 Conn. 396, 400, 721 A.2d 1181 (1998). A party asserting a cause of action for breach of fiduciary duty must prove the existence of a fiduciary relationship. See Dunham v. Dunham, 204 Conn. 303,322, 528 A.2d 1123 (1987). "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary." (Internal quotation marks omitted.) Id.
Our Supreme Court has stated that "[r]ather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) Id., 320. "All fiduciary relationships, to some degree, [require] confidence of one in another and a certain inequity or dependence arising from weakness of age, mental strength, business CT Page 886 intelligence, knowledge of facts involved, or other conditions which give one an advantage over the other." (Internal quotation marks omitted.)Murphy v. Wakelee, supra, 247 Conn. 407. Generally, "[t]he determination of whether such a fiduciary relationship exists is one of fact, and therefore, is not appropriately determined on a motion to strike." (Internal quotation marks omitted.) Zabensky v. Lawrence and MemorialHospital, Superior Court, judicial district of New London at New London, Docket No. 545872 (August 5, 1999, Martin, J.)
Our Supreme Court has found breaches of fiduciary duties where fraud, self-dealing or conflicts of interest were present, although the absence of these elements does not preclude a finding of such breach. See Murphyv. Wakelee, supra, 247 Conn. 400. At issue in the present case is whether an office manager owes any sort of duty to a terminated employee. "[T]he determination of whether a duty exists between individuals is a question of law." (Internal quotation marks omitted.) Jaser v. Fischer, Superior Court, judicial district of New Haven, Docket No. 418196 (March 1, 2000,Thompson, J.). The existence of a duty maybe properly tested in a motion to strike. See Gordon v. Bridgeport Housing Authority, 208 Conn. 161,171, 544 A.2d 1185 (1988).
The plaintiff alleges that defendant Miller owed a fiduciary duty to hold the commissions from the seven individual policies in escrow for her and breached the duty in releasing the commissions to defendant Morales instead. According to John Ellis, managing partner of the Connecticut office of New York Life, part of defendant Miller's duties as office manager was to enter an agent's earned commissions on the agent's ledger system. (See plaintiff's Exhibit F, Deposition of John Munn Ellis, December 20, 1996, p. 20.) James Robertson, compliance officer at New York Life, testified that "[i]f the application is submitted while the agent is currently under contract with New York Life and the application is submitted with all necessary requirements, which would mean any medical requirements that were needed and also the sufficient amount of cash to pay the initial premium due on that contract, then rightly the commissions would be payable to that agent at whatever time the case was ultimately paid, whether or not the agent was still under contract." (Emphasis added.) (Plaintiff's Exhibit E, Deposition of James A. Robertson, III, January 7, 1997, p. 115.)
"The Connecticut Supreme Court has never recognized the existence of a fiduciary relationship without some facts indicating that the claimed fiduciary has in some manner agreed to protect that person's interests."Dudrow v. Earnst Young, Superior Court, judicial district of Waterbury, Docket No. 144211 (January 14, 1999, Hodgson, J.). The plaintiff alleges that defendant Miller, in his capacity as office manager, promised to act on her behalf by seeing to the securing of CT Page 887 policy commissions and the placing of said commissions in an interest bearing account. Whether said undertaking ever occurred is contested but if found by the trier to have occurred, would "indicate that the claimed fiduciary had . . . agreed to protect the [plaintiff's] interests. Dudrowv. Earnst Young, supra. As defendant Miller was the plaintiff's office manager, the court cannot find as a matter of law that a fiduciary relationship did not exist as between defendant Miller and the plaintiff. Therefore, the defendant Miller's Motion for Summary Judgment as to this count is denied.
E. Civil Conspiracy
Defendant Miller moves for summary judgment on this claim on the ground that the plaintiff fails to allege the requisites of a civil action for conspiracy between defendants Miller, Morales and New York Life to steal the plaintiff's commissions and give them to defendant Morales. Specifically, defendant Miller argues that he is protected by the intracorporate conspiracy immunity doctrine. Further, defendant Miller argues that the plaintiff fails to allege he was acting in his individual capacity or had any personal stake in the actions he is claimed to have taken. In opposition, the plaintiff argues that she has set forth a claim of civil conspiracy as evidenced by Judge Ford's ruling of June 28, 1998, denying defendant Morales' motion for summary judgment.
The court first addresses the use of Judge Ford's prior decision to determine if the plaintiff has sufficiently set forth a claim of civil conspiracy. "The law of the case . . . is a flexible principle. . . .In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . .New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . .Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citations omitted; internal quotation marks omitted.)Breen v. Phelps, 186 Conn. 86, 99, 439 A.2d 1066 (1982); see also Millerv. Kirshner, 225 Conn. 185, 191, 621 A.2d 1326 (1993).
On May 29, 1997, defendant Morales moved for summary judgment on the ground that there was no genuine issue of material fact as to his non-liability on the plaintiff's civil conspiracy claim. On June 26, 1997, the court, Ford, J., denied defendant Morales' motion without discussion. The court will address this motion without reliance on the court's prior decision because the present motion for summary judgement is advanced by a different defendant on a different basis than that CT Page 888 raised by defendant Morales and, also, because in the intervening two years further discovery has been conducted and other evidence has been submitted to the court.
"The elements required to sustain a cause of action for civil conspiracy are: 1) a combination between two or more persons, 2) to do a criminal or unlawful act or a lawful act by criminal or unlawful means, 3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, 4) which act results in damage to the Plaintiff." (Internal quotation marks omitted.) Barber v. Glick, Superior Court, judicial district of Hartford at Hartford, Docket No. 589710 (January 20, 2000, Fineberg, J.). "[T]here is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself." (Internal quotation marks omitted.) Solberg v. Town of Oxford, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 036149 (August 31, 1995, Thompson, J.).
The plaintiff alleges that defendants Miller and Morales conspired to deprive the plaintiff of commissions she alleges belonged to her by finding the seven individual life insurance applications written by the plaintiff were deficient in some way and relaying that information to the plaintiff's former clients. The plaintiff argues that she satisfied company procedures required by New York Life on those applications. Accordingly, the plaintiff argues she establishes that defendants Miller and Morales converted funds rightfully owed to her. Defendant Miller argues that he was merely doing his job and further, that his actions are protected under the intra-corporate conspiracy immunity doctrine.
Under the intracorporate conspiracy immunity doctrine, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself." Day v.General Electric Credit Corp., 15 Conn. App. 677, 684, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). "One exception to this rule requires the plaintiff to allege that an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective." (Citation omitted; internal quotation marks omitted.) Johnsonv. City of Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 321129 (June 3, 1999, Nadeau, J.).
In the present case, the alleged conspiracy is comprised of defendant Miller assigning the seven individual policies to defendant Morales, notifying those individuals that the applications were incomplete in some manner and then reassigning the commissions to defendant Morales. The plaintiff fails to allege defendant Miller was acting outside the scope of CT Page 889 his employment or that defendant Miller had an independent personal stake in taking these actions. Accordingly, defendant Miller's actions are protected under the intracorporate conspiracy immunity doctrine. Therefore, the defendant's motion for summary judgment on the civil conspiracy claim is granted.
F. Defamation
Defendant Miller moves for summary judgment on the defamation claim on the ground that the plaintiff fails to identify the statements she claims are defamatory. Specifically, defendant Miller argues that the plaintiff has not alleged sufficient facts to state a cause of action in defamation because it is lacking as to what words constituted the defamation, to whom the words were published and how and when they were published. In opposition, the plaintiff alleges that upon her termination, defendant Miller made representations to the plaintiff's former clients regarding the quality of her work and that she was defamed thereby.
"A defamation action is based on the unprivileged communication of a false statement that tends either to harm the reputation of another by lowering him or her in the estimation of the community or to deter others from dealing or associating with him or her." (Internal quotation marks omitted.) Woodcock v. Journal Publishing Co., 230 Conn. 525, 553,646 A.2d 92 (1994), cert. denied, 513 U.S. 1149, 115 S.Ct. 1098,132 L.Ed.2d 1066
(1995). "Defamation is that which tends to injure `reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. . . . A prima facie case of defamation is made when the plaintiff demonstrates that: 1. [a] defamatory statement was made by the defendant; 2. [t]he defamatory statement identifies the plaintiff to a reasonable reader; 3. [t]he defamatory statement is published to a third person; and; 4. [t]he plaintiff's reputation suffers injury." (Citation omitted; internal quotation marks omitted.) Lizotte v. Welker, 45 Conn. Sup. 217, 220,709 A.2d 50 (1996), aff'd, 244 Conn. 156, 709 A.2d 1 (1998).
It is undisputed that letters on defendant Miller's letterhead were sent to four of the plaintiff's former clients for whom she had written up life insurance applications prior to her termination. (See plaintiff's Exhibit J.)[2] The letters to Jose Pereira and Maria Pereira dated May 12, 1994, state that necessary medical information had not been received by New York Life so the company declined their applications and refunded the amount they had paid. (See plaintiff's Exhibit J.) The letters to Armando Gonclaves and Maria Gonclaves dated May 10, 1994, state that their maximum sixty days of temporary coverage had expired and notice was given, along with refund checks for the policies, that the policies would CT Page 890 take effect when New York Life received the initial premium payment. (See plaintiff's Exhibit J.) Looking at the language of these letters, the court can find no reference to the plaintiff or identification of the quality or kind of work she performed in writing up the policyholder's applications. Therefore, the court finds that the letters do not contain any defamatory statements.
Accordingly, the defendant Miller's Motion for Summary Judgment as to the defamation count is granted.
 CONCLUSION
Defendant Miller's Motion for Summary Judgment regarding the negligent infliction of emotional distress count, the intentional infliction of emotional distress count, the civil conspiracy count and the defamation count is granted. Defendant Miller's Motion for Summary Judgment regarding the breach of implied contract count and the breach of fiduciary duty count is denied.
SKOLNICK, J.